[No. D045274. Fourth Dist., Div. One. Nov. 30, 2005.]

CITIZENS FOR RESPONSIBLE EQUITABLE ENVIRONMENTAL DEVELOPMENT, Plaintiff and Appellant, v.
CITY OF SAN DIEGO REDEVELOPMENT AGENCY et al., Defendants and Respondents;
HORTON LAND LLC et al., Real Parties in Interest and Respondents.

600

COUNSEL

Briggs Law Corporation and Cory J. Briggs for Plaintiff and Appellant.

Michael J. Aguirre, City Attorney, and Heidi A. Wierman, Deputy City Attorney, for Defendants and Respondents.

Sullivan Wertz McDade & Wallace and Jenny K. Goodman for Real Parties in Interest and Respondents.

OPINION

AARON, J.—

## I.

## INTRODUCTION

Citizens for Responsible Equitable Environmental Development (CREED) appeals the trial court's judgment denying its petition for a writ of mandate and dismissing its complaint for injunctive and declaratory relief against respondents City of San Diego Redevelopment Agency, San Diego Centre City Development Corporation, and the City of San Diego (collectively respondents).[1] CREED filed this lawsuit seeking to require respondents to prepare a project-specific environmental impact report (EIR) pursuant to the California Environmental Quality Act (CEQA) (Pub. Resources Code,[2] § 21000 et seq.) to analyze a hotel project proposed by real party in interest Westfield America, Inc. (Westfield) and various entities affiliated with Westfield.[3]

On appeal, CREED claims respondents abused their discretion in determining that the potential environmental impacts of the hotel project were adequately examined in two prior EIR's: (1) a 1992 EIR that analyzed environmental impacts associated with the update of the 1976 Centre City Community Plan (Community Plan), and (2) a 1999 EIR that updated the 1992 EIR in connection with the development of a baseball stadium in the Community Plan Planning Area (Planning Area).

CREED claims respondents were required to prepare a separate project-specific EIR for the hotel project because: (1) section 21090 requires a

---

[1] The distinctions between these entities are not relevant for purposes of this appeal. Therefore, for ease of reference, we refer to them interchangeably as "respondents."

[2] All statutory references are to the Public Resources Code, unless otherwise specified.

[3] These entities include Horton Land LLC, Six Continents Hotels, Inc., and Isis Hotels.

project-specific EIR for all redevelopment projects undertaken as part of a redevelopment plan; (2) respondents failed to satisfy the statutory requirements for relying on the 1992 EIR as a "master environmental impact report" under section 21157; (3) a "fair argument" can be made that the hotel project will have significant environmental impacts; (4) respondents' reliance on the prior EIR's violated CEQA's rules for limited environmental review associated with a project undertaken pursuant to a "program EIR" (Guidelines,[4] § 15168); and (5) CEQA's goals of information disclosure, public participation, and governmental accountability required a project-specific EIR. We affirm the judgment.

II.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, respondents adopted the "Master Environmental Impact Report for the Centre City Redevelopment Project and Addressing the Centre City Community Plan and Related Documents" (MEIR). The MEIR evaluated the potential environmental impacts that would result throughout the entire Planning Area from the update of the Community Plan, the adoption of the Redevelopment Plan for the Centre City Redevelopment Project, and the adoption of other related programs in downtown San Diego.

In 1999, respondents adopted the "Final Subsequent Environmental Impact Report to the Final Master Environmental Impact Report for the Centre City Redevelopment Project and Addressing the Centre City Community Plan and Related Documents for the Ballpark and Ancillary Development Projects, and Associated Plan Amendments" (SEIR). The SEIR was prepared to supplement information contained in the MEIR. The SEIR analyzed the potential environmental impacts related to the development of a baseball stadium and various ancillary projects in the Planning Area.

In July 2002, real parties in interest submitted an application to construct a 30-story, 450-room hotel in the Planning Area, on the north side of G Street above the Horton Plaza G Street Parking Garage. In October 2002, respondents prepared the "Final Environmental Secondary Study for the Proposed Inter-Continental Hotel Project" (Secondary Study). The Secondary Study determined that the hotel project was likely to cause significant environmental impacts, including increased traffic and air pollution. However, the Secondary

---

[4] References to Guidelines are to the administrative guidelines for implementation of CEQA. (Cal. Code Regs., tit. 14, § 15000 et seq.)

Study concluded that all of the potential significant environmental impacts that would be caused by the hotel project had been analyzed sufficiently in the MEIR and the SEIR, and that a new EIR for the hotel project was therefore not required. In November 2002, respondents approved the hotel project.

In January 2003, CREED filed a petition for a writ of mandate and complaint for injunctive and declaratory relief against respondents. CREED claimed respondents had violated CEQA by relying on the MEIR and SEIR in approving the hotel project, and requested that the trial court order respondents to prepare a project-specific EIR for the hotel project. In August 2004, after briefing and oral argument, the trial court entered judgment denying the petition and dismissing the complaint.

CREED timely appeals.

### III.

### DISCUSSION

### A. *CEQA overview*

In *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1315–1316 [8 Cal.Rptr.2d 473] (*Sierra Club*), the court provided an overview of CEQA and a description of some of the types of EIR's that may be prepared pursuant to that statute:

"Central to CEQA is the EIR, which has as its purpose informing the public and government officials of the environmental consequences of decisions before they are made. [Citation.]

"An EIR must be prepared on any 'project' a local agency intends to approve or carry out which 'may have a significant effect on the environment.' (§§ 21100, 21151; Guidelines, § 15002, subd. (f)(1).) [Fn. omitted.] The term 'project' is broadly defined and includes any activities which have a potential for resulting in a physical change in the environment, directly or ultimately. (§ 21065; Guidelines, §§ 15002, subd. (d), 15378, subd. (a); [Citation].) The definition encompasses a wide spectrum, ranging from the adoption of a general plan, which is by its nature tentative and subject to change, to activities with a more immediate impact, such as the issuance of a conditional use permit for a site-specific development proposal. [Citation.]

■ "To accommodate this diversity, the Guidelines describe several types of EIR's, which may be tailored to different situations. The most common is the project EIR, which examines the environmental impacts of a specific development project. (Guidelines, § 15161.) A quite different type is the program EIR, which 'may be prepared on a series of actions that can be characterized as one large project and are related either: (1) Geographically, (2) As logical parts in the chain of contemplated actions, (3) In connection with issuance of rules, regulations, plans, or other general criteria to govern the conduct of a continuing program, or (4) As individual activities carried out under the same authorizing statutory or regulatory authority and having generally similar environmental effects which can be mitigated in similar ways.' (Guidelines, § 15168, subd. (a); [citation].)"

■ An agency also may adopt a "master environmental impact report" as defined in section 21157. Section 21157 provides that such a report may be prepared in connection with various projects including "[a] general plan, element, general plan amendment, or specific plan." (§ 21157, subd. (a)(1).) Section 21157, subdivision (b) specifies the required contents of a "master environmental impact report." Sections 21157.1 and 21157.6 describe the use of such a report in approving subsequent projects.

■ "Judicial review under CEQA is generally limited to whether the agency has abused its discretion by not proceeding as required by law or by making a determination not supported by substantial evidence. [Citations.]" (*Sierra Club, supra,* 6 Cal.App.4th at p. 1317.) The precise standard of review to be used in determining whether an agency has abused its discretion under CEQA varies depending on the type of claim under review. (*Ibid.*)

B. *Section 21090 does not require respondents to prepare a separate EIR for the hotel project*

■ CREED claims section 21090 requires respondents to prepare a separate EIR for the hotel project. We apply the de novo standard of review to this claim, as it raises an issue of statutory interpretation. (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2005) 130 Cal.App.4th 1491, 1503 [31 Cal.Rptr.3d 353] [question of statutory interpretation is reviewed de novo in determining whether agency abused its discretion under CEQA].) "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We

first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' (*Ibid.*) If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484–485 [17 Cal.Rptr.3d 88] (*Whaley*).)

Section 21090 provides:

"(a) An environmental impact report for a redevelopment plan may be a master environmental impact report, program environmental impact report, or a project environmental impact report. Any environmental impact report for a redevelopment plan shall specify the type of environmental impact report that is prepared for the redevelopment plan.

"(b) If the environmental impact report for a redevelopment plan is a project environmental impact report, all public and private activities or undertakings pursuant to, or in furtherance of, a redevelopment plan shall be deemed to be a single project. However, further environmental review of any public or private activity or undertaking pursuant to, or in furtherance of, a redevelopment plan for which a project environmental impact report has been certified shall be conducted if any of the events specified in Section 21166 have occurred."

■ CREED contends that section 21090 requires that "every project undertaken as part of a redevelopment plan [has] to receive project-specific environmental review unless the plan itself was the subject of a *project* EIR." (Italics added.) However, the plain language of section 21090 does not require that an agency take any such action. Rather, section 21090 *prohibits* an agency from requiring further environmental review of redevelopment plans for which a project EIR has been prepared, *unless* the circumstances specified in section 21166 exist.[5] In other words, section 21090 does not contain any requirement that an agency prepare a project EIR. Rather, it

[5] Section 21166 provides: "When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs: [¶] (a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report. [¶] (c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (See also Guidelines, § 15162 [implementing § 21166].)

*precludes* an agency from requiring further environmental review under the circumstances specified in that statute.

CREED argues that one can infer from the statute's legislative history the Legislature's intent to require such project-specific EIR's via section 21090.[6] Although we need not consider this argument in view of the plain language of section 21090 (*Whaley, supra,* 121 Cal.App.4th at p. 485), the legislative history offered by CREED supports our interpretation. Section 21090 was amended in September 2002. (Stats. 2002, ch. 625, § 3, eff. Sept. 17, 2002.) Prior to the 2002 amendments, former section 21090 provided: "For all purposes of this division [CEQA], all public and private activities or undertakings pursuant to, or in furtherance of, a redevelopment plan shall be deemed to be a single project. However, further environmental review of any public or private activity or undertaking pursuant to, or in furtherance of, a redevelopment plan shall be conducted if any of the events specified in Section 21166 have occurred."

CREED claims the 2002 amendments to section 21090 were a response to the Court of Appeal's decision in *Friends of Mammoth v. Town of Mammoth Lakes Redevelopment Agency* (2000) 82 Cal.App.4th 511, 523 [98 Cal.Rptr.2d 334] (*Mammoth Lakes*). In *Mammoth Lakes,* the court considered a town's program EIR, which was prepared in connection with a redevelopment plan that listed 72 separate public improvements. (*Id.* at p. 524.) The program EIR did not analyze the potential direct or indirect environmental impacts of the projects. (*Id.* at p. 525.) The *Mammoth Lakes* court held that the EIR was inadequate, based in large part on its conclusion that, to the extent environmental information was available regarding the 72 projects at the time the EIR was approved, it should have been contained in the program EIR. The court reasoned that if the program EIR were deemed sufficient, notwithstanding the fact that it failed to include available information on the environmental impacts of the 72 projects, section 21090 would prohibit any further environmental review. (*Id.* at pp. 535–536.)

As the treatise upon which CREED relies in its opening brief explains, the amendments to section 21090 were intended to make clear that further environmental review of a redevelopment plan would be precluded only if a project EIR had been prepared for the plan. (Beatty et al., Redevelopment in California (3d ed. 2004) p. 58 (hereinafter Beatty).) The 2002 amendments do

---

[6] We grant CREED's unopposed request that we take judicial notice of the bill history for Statutes 2002, chapter 625, section 3, which amended section 21090.

not require further project-specific environmental review for redevelopment projects whose environmental effects have been adequately studied in a program EIR:

"The effect of the changes to Public Resources Code section 21090 was to restore the flexibility that had been lost a result of the *Mammoth Lakes* case. EIR's prepared in connection with the adoption of a redevelopment plan may be either program or project EIRs. Only if the EIR is a project EIR will the *prohibition* on further environmental review contained in subsection 21090[, subdivision] (b) be applicable. *If the EIR is a program EIR, it will be subject to the same procedures and limitations as other program EIRs.*

"Most EIR's prepared for redevelopment plan adoptions will be program adoptions. [¶] [A] program EIR prepared in connection with redevelopment plan adoption is usually a more general document than an EIR that might be prepared for a discrete development project. The program EIR should focus on the 'cumulative' or 'synergistic' impacts of the entire program. At this stage, less specific information is required about subsequent plan implementing activities than will be the case when those activities are before the public agency for decision. At that point, the agency must examine the environmental record to determine whether it adequately discloses and analyzes the environmental consequences of the specific implementing activity. *If it does, then the agency may proceed with the decision on the basis of the existing environmental record.* If it does not, the further environmental studies disclosing those specific impacts must first be prepared." (Beatty, *supra*, pp. 57–58, italics added.)

██ There is nothing in either the plain language of section 21090 or in its legislative history that requires the preparation of an EIR of any kind. Specifically, section 21090 does not require an agency to prepare an EIR for a project whose environmental impacts have been sufficiently analyzed in a prior program EIR or master EIR.[7] In part III.E., *post*, we consider whether respondents properly determined that the hotel project's potential environmental effects were adequately examined in a prior program EIR.

C. *Because CREED has not established that the MEIR is a "master environmental impact report" (§ 21157), we need not consider its arguments that respondents have not satisfied the statutory prerequisites of that section*

CREED claims that in approving the hotel project, respondents violated CEQA to the extent that respondents relied on the MEIR as a "master environmental impact report," as that term is defined in section 21157.

---

[7] In light of our conclusion, we need not consider respondents' alternative arguments for rejecting CREED's section 21090 claim.

In the trial court, respondents maintained that the MEIR was a "program EIR" as defined by the Guidelines, section 15168, subdivision (a), and not a "master environmental impact report" as defined in section 21157. Respondents explained that although the MEIR's title included the words "master environmental impact report," the MEIR was adopted in 1992, the year *prior* to the amendments to CEQA that established the existence of the "master environmental impact report" as defined under section 21157. (Stats. 1993, ch. 1130, § 18, p. 6324.) Further, the MEIR states that it is a "program EIR."

CREED has failed to put forth any argument that the MEIR is in fact a "master environmental impact report" as defined in section 21157, rather than a "program EIR" as defined in the Guidelines section 15168, subdivision (a). Instead, CREED *assumes* that the MEIR is the same as a "master EIR" under CEQA, and argues that respondents violated various statutory requirements pertaining to master EIR's. Because CREED has failed to establish that the MEIR is a "master environmental impact report" within the meaning of section 21157, we reject CREED's argument that respondents failed to comply with the statutory requirements pertaining to the use of such reports in approving the hotel project.

D. *The fair argument standard does not apply to judicial review of an agency's determination that a project's potential environmental impacts were adequately analyzed in a prior program EIR*

CREED claims respondents were required to prepare an EIR for the hotel project because a fair argument can be made that the project would have significant environmental impacts.

 The fair argument standard provides that an agency must prepare an EIR "whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact." (*No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66].) This test establishes a low threshold for the initial preparation of an EIR, reflecting a preference for resolving doubts in favor of environmental review. (*Sierra Club, supra*, 6 Cal.App.4th at pp. 1316–1317.)

 The *Sierra Club* court outlined the appropriate standard of judicial review of an agency's fair argument determination: "A court reviewing an agency's decision not to prepare an EIR in the first instance must set aside the decision if the administrative record contains substantial evidence that a proposed project might have a significant environmental impact; in such a

case, the agency has not proceeded as required by law. [Citation.] Stated another way, the question is one of law, i.e., 'the sufficiency of the evidence to support a fair argument.' [Citation.] Under this standard, deference to the agency's determination is not appropriate and its decision not to require an EIR can be upheld only when there is no credible evidence to the contrary. [Citation.]" (*Sierra Club, supra,* 6 Cal.App.4th at pp. 1317–1318.)

 However, the fair argument standard does not apply to judicial review of an agency's determination that a project is within the scope of a previously completed EIR. (*Sierra Club, supra,* 6 Cal.App.4th at p. 1318.) Once an agency has prepared an EIR, its decision not to prepare a supplemental or subsequent EIR[8] for a later project is reviewed under the deferential substantial evidence standard. (*Santa Teresa Citizen Action Group v. City of San Jose (Santa Teresa)* (2003) 114 Cal.App.4th 689, 702 [7 Cal.Rptr.3d 868], citing *Sierra Club, supra,* 6 Cal.App.4th at p. 1318; see also *Sierra Club, supra,* 6 Cal.App.4th at pp. 1320–1321 [concluding "evidence does not support a determination that . . . proposed site-specific project was either the same as or within the scope of the project, program, or plan described in the program EIR"].) "This rule applies to determinations regarding whether a new EIR is required following a program-EIR level of review." (1 Kostka & Zischke, *supra,* § 11.16, p. 440, citing *Santa Teresa, supra,* 114 Cal.App.4th at p. 703.)

In *Santa Teresa, supra,* 114 Cal.App.4th at p. 696, the city evaluated the potential environmental impact of a proposed water recycling project within an area known as "the Golden Triangle"[9] and its possible expansion, in an EIR that was completed in 1993. The EIR evaluated the "Golden Triangle" portion of the project at the "project" level (Guidelines, § 15161) and the future expansion of the project at "program" level (Guidelines, § 15168). (*Santa Teresa, supra,* 114 Cal.App.4th at p. 696.) In 2000, the city completed an initial study for one possible route for expansion of a pipeline portion of the project, which resulted in a negative declaration.[10] (*Santa Teresa,* at p. 698.) In 2001, the city conducted a second initial study for a slightly different proposed expansion. (*Id.* at pp. 698, 704.) Also in 2001, the City adopted the second initial study by way of an addendum to the initial 1993 EIR. The addendum stated, " '[a] subsequent EIR will not be prepared because the

---

[8] A "supplemental" EIR is used to make minor changes to an existing EIR, while a "subsequent" EIR is required to make more extensive changes. (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2004) § 19.4, 19.5, pp. 713–714.)

[9] This is an area encompassing parts of San Jose, Milpitas and Santa Clara.

[10] An "initial study" is used by an agency to determine whether a project will have a significant effect on the environment under CEQA. (Guidelines, § 15063.) If the initial study "results in a finding the project will not significantly affect the environment, the agency may so declare in a negative declaration." (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 742 [36 Cal.Rptr.2d 687].)

project described in this addendum does not involve new significant environmental effects or a substantial increase in the severity of previously identified significant effects.' " (*Id.* at p. 699.)

The petitioners filed a petition for a writ of mandate seeking to set aside the City's action as a violation of CEQA. (*Santa Teresa, supra,* 114 Cal.App.4th at p. 699.) The trial court denied the petition. (*Id.* at p. 700.) On appeal, the petitioners claimed that the 2001 initial study was inadequate because it relied on the 1993 EIR. (*Id.* at p. 702.) The *Santa Teresa* court rejected the petitioner's argument that the fair argument standard applied to its claim:

"When an agency has already prepared an EIR, its decision not to prepare a[] [supplemental or subsequent EIR] for a later project is reviewed under the deferential substantial evidence standard. [Citation.] Petitioners argue that the stricter 'fair argument' rule should apply. We disagree. [¶] . . . [¶]

"When the public agency has already prepared an EIR, no [supplemental or subsequent EIR] is required unless there are substantial changes in the project or the circumstances surrounding the project, or if new information becomes available. (§ 21166.) The reviewing court upholds an agency's decision not to require [a] [supplemental or subsequent EIR] if the administrative record as a whole contains substantial evidence to support the determination that the changes in the project or its circumstances were not so substantial as to require major modifications of the EIR. (*Sierra Club, supra,* 6 Cal.App.4th at p. 1318.) This deferential standard is a reflection of the fact that in-depth review has already occurred. [Citation.]" (*Santa Teresa, supra,* 114 Cal.App.4th at pp. 702–703.)

In this case, CREED contends that the evidence "overwhelmingly supports a fair argument" that the hotel project is likely to have significant environmental impacts. In support of its claim, CREED asserts that respondents' Secondary Study revealed that the project was likely to have significant environmental impacts. Assuming this is accurate, the Secondary Study went on to conclude that, "No [p]otentially [s]ignificant [e]nvironmental [i]impacts were identified in the preceding environmental evaluation that had not been considered in the MEIR/SEIR."

As noted above, the fair argument standard does not apply to review of an agency's determination that a project's potential environmental impacts were adequately analyzed in a prior program EIR. (*Santa Teresa, supra,* 114 Cal.App.4th at pp. 702–703.) Therefore, in view of respondents' determination that the project's potential environmental impacts were adequately

analyzed in the MEIR and the SEIR, we reject CREED's argument that the fair argument standard requires that respondents prepare an EIR for the hotel project.

Finally, CREED expressly states that it is not raising a substantial evidence challenge to respondents' determination that the MEIR and the SEIR adequately addressed the potential environmental impacts of the hotel project in raising its claim pertaining to the applicability of the fair argument standard.[11] However, CREED did raise an analogous challenge in the context of arguing that respondents failed to satisfy the statutory prerequisites for utilizing the MEIR as a "master environmental impact report" as that term is defined in section 21157. We concluded in part III.C., *ante*, that we need not consider CREED's arguments pertaining to whether respondents satisfied the statutory prerequisites for utilizing the MEIR as a "master environmental impact report" (§ 21157) in light of CREED's failure to establish that the MEIR is such a report. However, to the extent CREED's brief can be construed to raise a substantial evidence challenge to respondents' determination that the hotel project's potential environmental impacts were adequately addressed in the MEIR and SEIR, we consider this argument in part III.E., *post*.

E. *Respondents did not violate CEQA in determining that the potential environmental effects of the hotel project were adequately examined in the MEIR and SEIR*

CREED claims that respondents violated CEQA in determining that the potential environmental effects of the hotel project were adequately examined in the MEIR and SEIR.[12]

---

[11] In its reply brief, CREED states: "Respondents spend nearly twenty five pages of their opposition brief trying to demonstrate that 'substantial evidence' supports their reliance on the MEIR and the SEIR together as *the* EIR for the Project. [Citation.] As noted at the outset of this brief, such evidence has no impact on whether Respondents proceeded in the manner prescribed by law. [Citation.]" CREED further states, "Only the last two sections in Appellant's opening brief [discussing whether the statutory prerequisites for use of the MEIR as a master environmental impact report were met] turn on the existence of substantial evidence." CREED continues, "[T]he only aspect of Appellant's case that turns on the existence of 'substantial evidence' is its contention, under section 21157.6 [pertaining to master environmental impact reports], that there is substantial evidence of both changed circumstances and new information."

[12] We note that respondents do not contend that the hotel project was exempt from CEQA scrutiny pursuant to section 21083.3. Section 21083.3 limits CEQA review in cases in which a project is consistent with a community plan or a general plan when various statutory prerequisites are met. Because the parties present no argument regarding the potential applicability of section 21083.3, we do not consider the application of that statute to the issues in this case.

1. Natural Resources Defense Council v. City of Los Angeles *(2002) 103 Cal.App.4th 268 [126 Cal.Rptr.2d 615]* (NRDC) *does not preclude respondents from relying on the MEIR in approving the hotel project*

CREED claims *NRDC* "prohibit[s] [r]espondents from relying on the ten-year-old MEIR." In *NRDC*, the Los Angeles Harbor Department prepared a program EIR in 1997 in connection with various contemplated improvements at the Port of Los Angeles (Port). (*NRDC, supra*, 103 Cal.App.4th at p. 272.) In 2000, the United States Army Corps of Engineers prepared an EIR for the purpose of analyzing "project-specific" impacts of deepening various channels at the Port. (*Id.* at p. 274.) In May 2001, the City of Los Angeles (City) entered into a "lease/permit" with a lessee, China Shipping, for the purpose of constructing a container terminal at the Port. (*Id.* at p. 270.) Shortly thereafter, the City issued a notice of decision that stated that the city council had approved the project and had determined that the project had been adequately analyzed in the 1997 and 2000 EIR's. (*Id.* at p. 278.)

The petitioners filed a petition for a writ of mandate asserting that the City had violated CEQA. (*NRDC, supra*, 103 Cal.App.4th at p. 270.) The trial court denied the petition. (*Ibid.*) On appeal, the *NRDC* court determined that the city had violated CEQA by failing to prepare an additional EIR addressing project-specific impacts that were outside the scope of the prior EIR's. (*NRDC, supra*, 103 Cal.App.4th at p. 270.)

*NRDC* is legally and factually distinguishable from this case, and does not stand for the proposition that a project-specific EIR is required even where a governmental entity has determined that the potential environmental impact of a project was adequately considered in a prior EIR. In *NRDC*, the court noted that the City had entered into a "side letter agreement" with the lessee that addressed site-specific environmental concerns based on the City's "apparent[] concern[] that not all environmental issues had been addressed" in the prior EIR's. (*NRDC, supra*, 103 Cal.App.4th at p. 279.) In addition, notwithstanding this side letter agreement, the City failed to prepare an initial study to determine whether additional environmental analysis was required. (*Id.* at p. 282.) The *NRDC* court concluded, "The fact that the port[13] and China Shipping entered into a side letter agreement addressing site-specific environmental concerns arising from this Project provides adequate support for appellants' argument that the port was required to prepare an initial study leading to either preparation of an EIR or a negative declaration for this

---

[13] Although it is not entirely clear, it appears the *NRDC* court treated a governmental entity referred to as "the port" in the opinion, and the City, as interchangeable entities. (*NRDC, supra*, 103 Cal.App.4th at pp. 279, 282.)

Project." (*Id.* at p. 282.) Further, the *NRDC* court held that neither the 1997 EIR nor the 2000 EIR "adequately addresses the site-specific environmental concerns expressed in the side letter agreement." (*Id.* at p. 284.) In this case, in contrast, respondents performed an initial study that concluded that the MEIR and SEIR had adequately examined all potentially significant environmental impacts from the hotel project. For the reasons stated in part III.E.2, *post,* there is substantial evidence to support respondents' conclusion.

In addition, respondents cite *NRDC* as supporting their repeated assertion that respondents unlawfully relied on the MEIR and the SEIR in approving the hotel project because the project was not proposed until after the MEIR and the SEIR were certified. We acknowledge that the *NRDC* opinion contains some language that suggests that a program EIR may not serve as the EIR for a project proposed after its certification. For example, the *NRDC* court stated: "The China Shipping project arose more than three years after the 1997 EIR and was not specifically addressed in the 2000 SEIS/SEIR. It cannot be considered part of the overall 'project' addressed in those documents." (*NRDC, supra,* 103 Cal.App.4th at pp. 284–285.) However, there is other language in *NRDC* that suggests the court's acknowledgment that a program EIR may, under appropriate circumstances, be used as an EIR for a project proposed after its certification. (*Id.* at p. 282 ["A program EIR does not always suffice for a later project"].)

To the extent *NRDC* can be read to suggest that a program EIR is never sufficient to analyze a project proposed after its certification, we disagree. The Guidelines unambiguously state that a program EIR may be used with "subsequent activities" as follows:

"(c) Use With Later Activities. Subsequent activities in the program must be examined in the light of the program EIR to determine whether an additional environmental document must be prepared.

"(1) If a later activity would have effects that were not examined in the program EIR, a new initial study would need to be prepared leading to either an EIR or a negative declaration.

"(2) If the agency finds that pursuant to Section 15162, no new effects could occur or no new mitigation measures would be required, the agency can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document would be required.

"(3) An agency shall incorporate feasible mitigation measures and alternatives developed in the program EIR into subsequent actions in the program.

"(4) Where the subsequent activities involve site specific operations, the agency should use a written checklist or similar device to document the

evaluation of the site and the activity to determine whether the environmental effects of the operation were covered in the program EIR.

"(5) A program EIR will be most helpful in dealing with subsequent activities if it deals with the effects of the program as specifically and comprehensively as possible. With a good and detailed analysis of the program, many subsequent activities could be found to be within the scope of the project described in the program EIR, and no further environmental documents would be required." (Guidelines, § 15168, subd. (c).)

■ To hold that a project-specific EIR must be prepared for all activities proposed after the certification of the program EIR, even where the subsequent activity is "within the scope of the project described in the program EIR" (Guidelines, § 15168, subd. (c)(5)), would be directly contrary to one of the essential purposes of program EIR's, i.e., to streamline environmental review of projects within the scope of a previously completed program EIR. We conclude that a program EIR may serve as the EIR for a subsequently proposed project to the extent it contemplates and adequately analyzes the potential environmental impacts of the project, and that respondents were not prohibited from relying on the MEIR under *NRDC, supra,* 103 Cal.App.4th 268.

> 2. *Respondents' determination that the potential environmental effects of the hotel project were adequately examined in the MEIR and SEIR is supported by substantial evidence*

CREED contends that respondents' determination that the hotel project "will not have any significant effect on the environment that was not identified and considered in the MEIR" is not supported by substantial evidence.

In *Santa Teresa, supra,* 114 Cal.App.4th at page 704, the court outlined the substantial evidence standard of review in this context: "We independently review the administrative record. [Citation.] We resolve reasonable doubts in favor of the administrative decision. [Citation.] 'We do not judge the wisdom of the agency's action in approving the Project or pass upon the correctness of the EIR's environmental conclusions. [Citations.] Our function is simply to determine whether the agency followed proper procedures and whether there is substantial evidence supporting the agency's determination that the changes in the Project (or its circumstances) were not substantial enough to require an SEIR.' [Citation.]"

CREED first suggests that the hotel project was not within the geographic scope of the MEIR and that, therefore, the MEIR did not analyze the potential environmental impacts of the hotel project identified in the Secondary Study. The MEIR defines the term Planning Area and includes a map that identifies the boundaries of the Planning Area. The MEIR states, "The environmental analysis contained in this EIR considers the entire Planning Area . . . ." The Secondary Study contains a map that indicates that the hotel project is within the Planning Area as defined by the MEIR. Therefore, we reject CREED's claim that the MEIR "exclud[es] the part of downtown where the Project is to be built."

Second, CREED reiterates its argument that the MEIR could not have served as an EIR for the hotel project because the project was proposed after certification of the MEIR. We reject that argument for the reasons stated in part III.E.1., *ante*.

Respondents point to considerable evidence in support of their determination that the potential environmental impacts of the hotel project were within the scope of the MEIR and the SEIR. First, the MEIR states that it is a program MEIR that will serve as "the basis for the environmental assessment of the proposed Community Plan." As noted in the MEIR, the Community Plan designated the area where the hotel is to be built as a "Commercial/Office District" in which "hotels and motels" would be emphasized as among the allowable land uses. In addition, the MEIR states that it is providing an environmental assessment of the "ultimate capacity buildout scenario" of the Planning Area over a 35-year period. The MEIR forecasts that a total of 5,880 additional hotel rooms would be constructed over a 35-year period within the Planning Area, and expressly contemplates the completion of the Horton Plaza Redevelopment Project, which the hotel project will complete. Further, the MEIR specifically provides that "this EIR will be used for project-specific approvals of future development activities with the . . . Planning Area."

Respondents also completed the Secondary Study, an initial study pursuant to Guidelines section 15063, subdivision (d), to determine whether an additional EIR would be required for the hotel project. The Secondary Study analyzed potential environmental impacts from the project with reference to the MEIR and the SEIR, and concluded that all of the potential significant environmental impacts from the hotel project had been sufficiently analyzed in the MEIR and the SEIR.[14] For example, the Secondary Study noted that

---

[14] The Secondary Study explained that the SEIR was prepared to supplement and update information in the MEIR. Although the SEIR did not specifically address the area in which the hotel project is to be located, the SEIR did analyze the potential environmental impacts that would result from the development of a baseball stadium project in the Planning Area.

the hotel project "is consistent in land use and intensity" with the Community Plan. The Secondary Study did state that the "cumulative impacts of the [hotel project] would be significant and not fully mitigable with respect to air quality and traffic." However, the Study concluded that these "cumulative impacts would not be greater than those identified in the MEIR [and] SEIR."

We conclude that respondents' determination that the hotel project's potential environmental effects were adequately examined in the MEIR and SEIR is supported by substantial evidence.

F. *Respondents did not violate the goals of CEQA by failing to prepare a project-specific EIR for the hotel project*

CREED claims that respondents' improper failure to prepare a project-specific EIR for the hotel project violated the goals of information disclosure, public participation, and government accountability embodied in CEQA. CREED also raises the specific claim that respondents improperly failed to circulate a draft of the Secondary Study for public comment.

We concluded in parts III.B.–E., *ante*, that respondents did not violate CEQA by failing to prepare a project-specific EIR for the hotel project. Accordingly, we reject CREED's claim that respondents' purported violation of CEQA frustrated CEQA's purposes.

With regard to the specific claim concerning respondents' failure to circulate a draft of the Secondary Study for public comment, CREED has not cited any authority, and we are aware of none, that would require respondents to take such action. The Secondary Study stated that it "was prepared in compliance with the requirements for an Initial Study" according to the Guidelines. Guidelines section 15063, subdivision (d) outlines the requirements of an initial study. That section does not require that a draft initial study be circulated for public comment. (Accord, *Santa Teresa, supra*, 114 Cal.App.4th at p. 702 ["[c]ity was not required to give notice that an initial study was being prepared, nor was [c]ity required to circulate the addendum [adopting the initial study] for public comment," citing Guidelines, §§ 15063, 15164, subds. (a), (c)].) We therefore reject CREED's claim that respondents were required to circulate a draft of the Secondary Study for public comment.

---

Therefore, the SEIR is relevant in determining whether or not the environmental impacts of the hotel project had been adequately analyzed in the two prior EIR's.

## IV.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied December 21, 2005.