188 Cal.App.4th 1406 (2010)
FRED TOMLINSON et al., Plaintiffs and Appellants,
v.
COUNTY OF ALAMEDA et al., Defendants and Respondents;
Y.T. WONG et al., Real Parties in Interest and Respondents.
No. A125471.
Court of Appeals of California, First District, Division Five.
October 6, 2010.
*1409 Remy, Thomas, Moose & Manley and Sabrina V. Teller for Plaintiffs and Appellants.
Jewell J. Hargleroad for Fairview Community Club as Amicus Curiae on behalf of Plaintiffs and Appellants.
Richard E. Winnie, County Counsel, Brian E. Washington, Assistant County Counsel, and Manuel F. Martinez, Associate County Counsel, for Defendants and Respondents.
Richard K. Abdalah and Miriam H. Wen-Lebron for Real Parties in Interest and Respondents.

OPINION
JONES, P. J.
Appellants Fred and D'Arcy Tomlinson (the Tomlinsons) filed a petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5), challenging the decision of respondent County of Alameda (County) to approve a subdivision development proposed by real parties in interest, Y.T. Wong and SMI Construction, Inc. (Developer). The trial court denied the petition. The Tomlinsons appeal from the trial court's order, *1410 contending the County abused its discretion in deeming the proposed subdivision exempt from the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA), under the categorical exemption for in-fill development (Cal. Code Regs., tit. 14, § 15332).[1] As we agree that this exemption does not apply, we reverse the trial court's order and remand the matter with instructions to issue a writ of mandate directing the County to set aside its decision.

FACTUAL AND PROCEDURAL BACKGROUND

The Proposed Subdivision
In December 2006, Developer filed an application with the Alameda County Planning Department (Planning Department) to merge two parcels on Bayview Avenue into one 1.89-acre parcel, subdivide it into 12 lots, and develop each with a single-family home (the proposed subdivision). The proposed subdivision site is located in the Fairview area of unincorporated Alameda County, a residential area primarily consisting of single-family homes. The property is classified for zoning purposes as R-1 residential single family. Three older structures are situated on the site, but the rear of the property is undeveloped. There are 34 trees on or adjacent to the site. As part of the proposed subdivision, all of the structures would be demolished, and most of the trees would be removed.
In April 2007, Developer revised its application to address concerns raised by various agencies.

Preliminary Plan Review
On May 14, 2007, the Planning Department issued a referral notifying various agencies and local residents of Developer's revised application and inviting comments. Although the Planning Department had originally contemplated conducting an initial study (Guidelines, § 15063), the referral indicated that the proposed subdivision was exempt from CEQA "based on the site's existing conditions (developed as a low-density residential site with gently sloping land and minimal habitat value), and conformance to the existing zoning for the site . . . ."
On July 2, 2007, the Alameda County Planning Commission (Planning Commission) held a preliminary plan review for the proposed subdivision at *1411 its regularly scheduled meeting. The staff report concluded that the proposed subdivision was categorically exempt from CEQA as in-fill development (Guidelines, § 15332) because "the proposed development would occur in an established urban area, would not significantly impact traffic, noise, air or water quality, and could be served by required utilities and public services." The staff report noted that the plans did not meet zoning requirements for guest parking, and one lot violated the setback requirements of a zoning ordinance. Planning Department staff believed a reduction in the number of lots might be required to resolve these issues.
When the Planning Commission opened the floor to public testimony, residents voiced concerns about the loss of views, compatibility with existing homes, additional traffic, parking, and preservation of the mature trees. The chairman continued the matter, noting "this is the direction we've given[,] and we look forward to you [(Developer)] coming back to us with your formal application."
In an August 2007 e-mail to the County, the Tomlinsons noted that two new developments were underway within half a mile of the proposed subdivision and that there were several other developments within a one-mile radius. They asked for data on recent and planned growth in the area and comprehensive plans addressing the impact on the infrastructure, including traffic, transportation, utilities, and police and fire protection.
On November 19, 2007, the County sent out another referral regarding the proposed subdivision, noting that it had been modified to address comments from various agencies and the public. The referral gave notice that the Planning Commission would consider the proposed subdivision again on December 17, 2007.
On November 30, 2007, the Tomlinsons sent County staff a letter signed by more than 70 local residents, expressing concerns about additional traffic congestion and related safety issues, increased taxes and utility costs, reduced property values, and drainage problems. Noting that other single-family homes less than a quarter-mile away had been on the market for a year, the letter expressed concern that the houses in the proposed subdivision could become rentals with multi-family occupancy if they did not sell, significantly increasing parking overflow and traffic in the area. Residents requested an environmental review to evaluate whether the proposed subdivision was consistent with the goals of the general plan.
A few days later, the Tomlinsons pointed out the issues to be considered in reviewing new in-fill projects under the specific plan, including residential density, traffic, parking, public services and utilities, building height, natural *1412 features such as mature vegetation and creeks, and retention of existing areas of contiguous open space. The Tomlinsons were "particularly interested in the findings of (what we've read as required in the . . . Specific Plan) an environmental review."

Approval by the Planning Commission
The Planning Commission considered the proposed subdivision at its regularly scheduled meeting on December 17, 2007. Developer had modified the plans to reduce the density of the site to 11 lots. Ten of the lots ranged from 5,000 to 5,186 square feet, and one lot had an area of 7,170 square feet. Each lot would be developed with a two-story, 2,900-square-foot home.
Planning Department staff indicated that the proposed subdivision "complied with the relevant General Plan, Fairview Area Specific Plan and zoning requirements," "would occur in an established urban area, has no value as wildlife habitat, would not result in significant effects relating to traffic, noise, air quality or water quality, and can be adequately served by all required utilities and public services . . . ." Accordingly, the staff recommended that the Planning Commission find the proposed subdivision "Categorically Exempt from the requirements of [CEQA] per Section 15332, Infill Development Projects, and that further environmental analysis is not necessary."
At the Planning Commission's meeting, the Tomlinsons acknowledged the County's conclusion that the proposed subdivision was exempt as in-fill, but said: "[W]e really do feel that it's critical that an environmental assessment is done because . . . [75] homeowners . . . sign[ed] that petition, and their primary concern was existing traffic issues . . . ." They explained that several other new developments within a half-mile of the proposed subdivision would generate more than 100 cars in additional traffic, and that traffic management was critical under the specific plan.
By resolution, the Planning Commission approved the proposed subdivision and found it exempt from CEQA, concluding the proposed subdivision was in the public interest and imposing 60 conditions "necessary for the public health and safety and a necessary prerequisite to the orderly development of the surrounding area."

The Appeal to the Board of Supervisors
On behalf of local residents, the Tomlinsons appealed from the Planning Commission's decision to the Alameda County Board of Supervisors (Board). (See Alameda County Gen. Ord. No. 16.08.100.) The Tomlinsons wrote a *1413 letter to the Board reiterating the concerns raised before the Planning Commission and expressing confusion that the proposed subdivision was exempt from CEQA, contending the specific plan required such review for all in-fill projects. They noted again that there were other developments within a half-mile radius of the proposed subdivision and expressed concern that the intent of the specific plan would be circumvented if the County applied the exemption to all of them. In such case, the Tomlinsons contended, analysis of each individual project and their cumulative effects would not be addressed.
The Planning Department submitted a summary of the Planning Commission's decision and the Tomlinsons' appeal to the Board, noting the residents' desire for a traffic study of the proposed subdivision's individual and cumulative impacts.
Four days prior to the hearing before the Board, the Tomlinsons sent an e-mail to County planners entitled, "Assistance Requested" and stating: "It is our understanding for the Environmental Impact categorical exemption, an Environmental Checklist (Appendix G of CEQA guidelines) is typically filed. Since the Fairview Plan required environmental impact reviews[,] we wanted to check that this procedural process did occur . . . ." The Tomlinsons asked for a copy of this checklist. Their e-mail also set out (1) subdivision (c) of section 15332 of the Guidelines, which requires that the proposed development have "no value, as habitat for endangered, rare or threatened species," and (2) a provision in the specific plan that "[t]he County shall require that roadways and developments be designed to minimize impacts to wildlife corridors and regional trails." The Tomlinsons said deer and other wildlife used this open space daily as a corridor to Don Castro Regional Park.
On April 8, 2008, the day of the Board hearing, a County planner responded to the Tomlinsons in an e-mail noting: "There is no indication leading the lead agency to suspect that the project site has any value for endangered, rare or threatened species." The remainder of the e-mail, taken directly from the December 17, 2007 staff report, simply restated the basis for the exemption.
At the Board hearing, the Tomlinsons said the proposed subdivision violated the specific plan's density requirements, which they claimed allowed fewer than eight homes on the site. They said they had "learned that infill projects are categorically exempt from environmental reviews," but again contended the specific plan required environmental review of in-fill projects and raised concerns about the cumulative impact of this proposed subdivision and several other developments nearby.
*1414 The Board denied the Tomlinsons' appeal and approved the proposed subdivision. The Board did not expressly find that the proposed subdivision was exempt from CEQA but indicated in its resolution that the Planning Department had "review[ed] this petition in accordance with the provisions of [CEQA], and determined that it was Categorically Exempt pursuant to Section 15332 (Infill Development)." The Board proposed two additional conditions relating to viewsheds and sidewalk construction, but otherwise concurred with the findings and conditions of the Planning Commission.

The Trial Court Proceedings
On July 7, 2008, the Tomlinsons filed in Alameda County Superior Court a verified petition for a writ of mandate setting aside the County's decision. They alleged the County had violated state planning and zoning laws (Gov. Code, § 65000 et seq.) and had not complied with CEQA. In September 2008, they amended their petition to supplement their allegations. On January 15, 2009, the trial court held a hearing on the petition, and took the matter under submission. Three months later, the trial court denied the petition. The Tomlinsons filed a timely notice of appeal from the trial court's order.[2] On appeal, the Tomlinsons have abandoned their contentions under the state Planning and Zoning Law (Gov. Code, § 65000 et seq.) and focus exclusively on the County's failure to comply with CEQA.

DISCUSSION

A. The Standard of Review

"In considering a petition for a writ of mandate in a CEQA case, `[o]ur task on appeal is "the same as the trial court's." [Citation.] Thus, we conduct our review independent of the trial court's findings . . .' . . . [and] examine the [County's] decision, not the trial court's." (Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego (2006) 139 Cal.App.4th 249, 257 [42 Cal.Rptr.3d 537], citation omitted.) Under section 21168.5, we review the County's exemption determination for a prejudicial abuse of discretion. (San Lorenzo, supra, 139 Cal.App.4th at pp. 1381-1382 [applying § 21168.5 to agency's exemption determination]; East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist. (1989) 210 Cal.App.3d 155, 165 [258 Cal.Rptr. 147] (East Peninsula) [same].)[3] "Abuse *1415 of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (§ 21168.5.) "`Judicial review of these two types of error differs significantly: [w]hile we determine de novo whether the agency has employed the correct procedures, "scrupulously enforc[ing] all legislatively mandated CEQA requirements" [citation], we accord greater deference to the agency's substantive factual conclusions.' [Citation.]" (Save Tara v. City of West Hollywood (2008) 45 Cal.4th 116, 131 [84 Cal.Rptr.3d 614, 194 P.3d 344].)

B. CEQA: General Principles

(1) "It is state policy in California that `the long-term protection of the environment . . . shall be the guiding criterion in public decisions.' [Citations.]" (Davidon Homes v. City of San Jose (1997) 54 Cal.App.4th 106, 112 [62 Cal.Rptr.2d 612] (Davidon Homes).) "`[T]he overriding purpose of CEQA is to ensure that agencies regulating activities that may affect the quality of the environment give primary consideration to preventing environmental damage.'" (San Lorenzo, supra, 139 Cal.App.4th at p. 1372, quoting Save Our Peninsula Committee v. Monterey County Bd. of Supervisors (2001) 87 Cal.App.4th 99, 117 [104 Cal.Rptr.2d 326].) To implement this policy, CEQA and the Guidelines establish a three-tiered process determining the level of environmental review required. (San Lorenzo, supra, 139 Cal.App.4th at pp. 1372-1373; Davidon Homes, supra, 54 Cal.App.4th at p. 112.) At issue here is the first step of this process, which requires public agencies to conduct a preliminary review to determine whether CEQA applies to a proposed activity. (San Lorenzo, supra, 139 Cal.App.4th at pp. 1372-1373; Davidon Homes, supra, 54 Cal.App.4th at p. 112; see Guidelines, §§ 15060, 15061.) If the activity constitutes a "project" as defined by statute, CEQA applies unless the activity falls within one of the exemptions established by the Legislature or the CEQA Guidelines. (§ 21080, subd. (a); San Lorenzo, supra, 139 Cal.App.4th at p. 1373; Davidon Homes, supra, 54 Cal.App.4th at p. 112; see § 21065 [defining "project"].) "`Where a project is categorically exempt, it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever."'" (San Lorenzo, supra, 139 Cal.App.4th at *1416 p. 1386.) Accordingly, if the agency determines that an exemption applies, no further environmental review is necessary. (Id. at p. 1373; Davidon Homes, supra, 54 Cal.App.4th at p. 113.)[4]

C. The County's Exemption Determination Constitutes an Abuse of Discretion.

The Tomlinsons contend that the requirements of CEQA apply because the proposed subdivision does not meet the criteria for the in-fill development exemption. (See Guidelines, § 15332.) We review the County's finding for substantial evidence. (Davidon Homes, supra, 54 Cal.App.4th at p. 115.) To establish the propriety of an exemption, "`the administrati[ve] record must disclose substantial evidence of every element of the contended exemption.. . .' [Citation.]" (CalBeach Advocates v. City of Solana Beach (2002) 103 Cal.App.4th 529, 536 [127 Cal.Rptr.2d 1] (CalBeach).)

1. The In-fill Development Exemption (Guidelines, § 15332).

A project is categorically exempt as "in-fill development" if:
"(a) [it] is consistent with the applicable general plan designation and all applicable general plan policies[,] as well as with applicable zoning designation and regulations[;]
"(b) [t]he proposed development occurs within city limits on a project site of no more than five acres substantially surrounded by urban uses[;]
"(c) [t]he project site has no value, as [a] habitat for endangered, rare or threatened species[;]
"(d) [a]pproval of the project would not result in any significant effects relating to traffic, noise, air quality, or water quality[; and]
"(e) [t]he site can be adequately served by all required utilities and public services." (Guidelines, § 15332, italics added.)
The Tomlinsons' primary contention is that the proposed subdivision will not occur "within city limits" under subdivision (b) of Guidelines section *1417 15332 because the site is located in unincorporated Alameda County.[5] The County seeks a broader construction of the phrase "within city limits" but argues, along with Developer, that the Tomlinsons are precluded from asserting the "within city limits" requirement in the first instance because they did not object on this ground at the administrative level and, therefore, failed to exhaust their administrative remedies as to this argument (§ 21177). As we explain in part C.3. of this opinion, we conclude the Tomlinsons are correct in their assertion that substantial evidence does not show the proposed subdivision satisfies the "within city limits" requirement of the in-fill development exemption. Before we reach the merits of this argument, however, we must first dispose of respondents' contention that section 21177 precludes the Tomlinsons from asserting it.[6]

2. Section 21177 Does Not Bar the "Within City Limits" Argument.

(2) Section 21177 codifies the doctrine of exhaustion of administrative remedies in CEQA proceedings. (Lodi, supra, 144 Cal.App.4th at p. 875.) Former section 21177, subdivision (a) provided: "No action or proceeding may be brought [to attack, review, set aside, void, or annul certain acts or decisions of a public agency on the grounds of noncompliance with CEQA] unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (See Stats. 2010, ch. 496, § 11, effective Sept. 29, 2010 [no substantive change].) Although the exhaustion requirement has been described as "jurisdictional" (Bakersfield Citizens For Local Control v. City of Bakersfield (2004) 124 Cal.App.4th 1184, 1199 [22 Cal.Rptr.3d 203]), a failure to exhaust does not deprive a court of fundamental subject matter jurisdiction (Azusa, supra, 52 Cal.App.4th at pp. 1215-1216). Properly understood, exhaustion under section 21177 is a statutory prerequisite for asserting a ground of CEQA noncompliance. (Porterville Citizens For Responsible Hillside Development v. City of Porterville (2007) 157 Cal.App.4th 885, 910 [69 Cal.Rptr.3d 105] *1418 (Porterville).) It is designed to give an agency "the opportunity to receive and respond to articulated factual issues and legal theories before its actions are subject to judicial review." (Ibid., citing Coalition for Student Action v. City of Fullerton (1984) 153 Cal.App.3d 1194, 1198 [200 Cal.Rptr. 855].) To that end, the exact issue asserted in the trial court must have been presented to the administrative agency. (Resource Defense Fund v. Local Agency Formation Com. (1987) 191 Cal.App.3d 886, 894 [236 Cal.Rptr. 794].) The petitioner bears the burden of showing that the issues raised in the judicial proceeding were first raised at the administrative level. (Porterville, at p. 909.)
The Tomlinsons contend they exhausted their administrative remedies before the County, maintaining they are subject to a less stringent standard for exhaustion because (1) this was an administrative proceeding, and they were unrepresented by counsel, and (2) the County misled them by failing to expressly advise them of the legal requirement that the proposed subdivision be "within city limits." They and other local residents raised a number of concerns in the administrative proceedings and requested environmental review multiple times. They questioned the applicability of the exemption but did so, not because the proposed subdivision was outside city limits, but on the ground that the specific plan required environmental review. We need not decide whether to hold the Tomlinsons to a lesser standard or whether these objections were sufficient to satisfy the exhaustion requirement, as we conclude section 21177 does not apply here.[7]
(3) In Azusa, supra, 52 Cal.App.4th at page 1209, the court held that the doctrine of exhaustion of administrative remedies does not apply in actions challenging an agency's exemption determination. The court noted that under the statute's own terms, the exhaustion requirement established by section 21177 applies only "where (1) CEQA provides a public comment period, or (2) there is a public hearing before a notice of determination is issued." (Azusa, at p. 1210.) CEQA does not provide for a public comment period before an agency makes an exemption finding, and there is no "`public hearing . . . before the issuance of the notice of determination'" because this document is never filed if the agency declares an exemption. (Azusa, at *1419 p. 1210.) Accordingly, "[t]he only prerequisite to an action challenging an exemption determination is that it be brought within 180 days of the date of the final decision of the agency. (Guidelines, § 15062, subd. (d).)" (Azusa, at pp. 1210-1211, citing Castaic Lake Water Agency v. City of Santa Clarita (1995) 41 Cal.App.4th 1257, 1266 [49 Cal.Rptr.2d 79], and City of Pasadena v. State of California (1993) 14 Cal.App.4th 810, 821 [17 Cal.Rptr.2d 766], disapproved on other grounds in Western States Petroleum Assn. v. Superior Court (1995) 9 Cal.4th 559, 569-570 & fn. 2 [38 Cal.Rptr.2d 139, 888 P.2d 1268]; see Santa Teresa Citizen Action Group v. City of San Jose (2003) 114 Cal.App.4th 689, 702 [7 Cal.Rptr.3d 868] (Santa Teresa) [§ 21177, subd. (e) "codifies the rule that unless there is a clearly defined administrative procedure for resolving complaints, the exhaustion doctrine is inapplicable"].)[8]
Relying upon the analysis of Azusa to hold that section 21177 does not apply in this case advances CEQA's strong policies of environmental protection and public disclosure of information regarding the environmental impact of agency action. (See San Lorenzo, supra, 139 Cal.App.4th at p. 1372; Sierra Club v. County of Sonoma (1992) 6 Cal.App.4th 1307, 1315 [8 Cal.Rptr.2d 473].) Moreover, this holding does not offend the dual policy rationale giving rise to the exhaustion requirement in the first instance. The doctrine of exhaustion of administrative remedies "prevents courts from interfering with the subject matter of another tribunal" by giving the agency an opportunity to respond to factual issues and legal theories within its area of expertise before its actions are reviewed by a court. (Lodi, supra, 144 Cal.App.4th at p. 874.) The exhaustion requirement also "`"facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency." [Citation.] It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review. [Citation.]'" (Sierra Club v. San Joaquin Local Agency Formation Com. (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543], quoting Yamaha Motor Corp. v. Superior Court (1986) 185 Cal.App.3d 1232, 1240-1241 [230 Cal.Rptr. 382]; see Lodi, at p. 874.) The point the Tomlinsons purportedly failed to raise herethat the project would not occur "within city limits"does not implicate the County's particular *1420 expertise and does not require an evidentiary determination. Indeed, the fact on which it turns is undisputed, and the County conceded at oral argument that it had not been deprived of an opportunity to offer evidence of this fact. With these policy implications in mind, we follow the lead of the court inAzusa in holding that section 21177 does not bar the Tomlinsons from challenging the County's exemption determination on the ground that the proposed subdivision is not "within city limits."
In so holding, we recognize that the Tomlinsons apparently acknowledge a duty to exhaust with regard to their "within city limits" argument, because "there was some opportunity to communicate concerns to the County's decisionmakers." (See § 21177, subd. (e) [§ 21177 does not apply to "any alleged grounds for noncompliance with [CEQA] for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing prior to the approval of the project . . ."].) Indeed, they expressly conceded in the trial court that they "[did] not claim that the potential exception [set out in Azusa] applies . . . [and] readily acknowledge[d] that since the County held a hearing, [they] had a duty to exhaust." "This court, of course, is not bound to accept concessions of parties as establishing the law applicable to a case." (Desny v. Wilder (1956) 46 Cal.2d 715, 729 [299 P.2d 257].)[9] The applicability of section 21177's exhaustion requirement to actions challenging an agency's exemption determination is a matter of statutory interpretation and a pure question of law. (See East Peninsula, supra, 210 Cal.App.3d at p. 165 ["The interpretation and applicability of a statute is a question of law . . . ."].) In such cases, "[i]n the public interest we have discretion to reject [a party's] concession, because our function to correctly interpret the statute is not controlled by [a party's] concession of its meaning." (R.J. Land & Associates Construction Co. v. Kiewit-Shea (1999) 69 Cal.App.4th 416, 427, fn. 4 [81 Cal.Rptr.2d 615]; see Bell v. Tri-City Hospital Dist. (1987) 196 Cal.App.3d 438, 449 [241 Cal.Rptr. 796] (Bell) ["In our view, the Bells' counsel's erroneous concession cannot and should not prevent this court from applying sound legal principles to the objective facts disclosed by the record."], disapproved on other grounds in State of California v. Superior Court (2004) 32 Cal.4th 1234, 1244 [13 Cal.Rptr.3d 534, 90 P.3d 116]; see also Bell, at p. 450 [emphasizing the *1421 strong public policy in favor of resolving cases on their merits rather than on technical procedural grounds].) As noted above, CEQA promotes the public's interest in protection of the environment and the disclosure of information regarding public action that may affect the environment. (San Lorenzo, supra, 139 Cal.App.4th at p. 1372; see Sierra Club v. County of Sonoma, supra, 6 Cal.App.4th at p. 1315 [noting that the purpose of the environmental impact report is "informing the public and government officials of the environmental consequences of decisions before they are made"].) The County's reliance on an exemption that, by its plain meaning, does not apply thwarts these purposes and impacts the public as a whole, not just the Tomlinsons. We therefore reject the Tomlinsons' concession in the trial court and hold, in the public interest, that section 21177 does not preclude the Tomlinsons from challenging the County's exemption determination because the proposed subdivision is not "within city limits."
We note that after our decision in this case was filed, Division Two of this court certified its opinion in Hines v. California Coastal Com. (2010) 186 Cal.App.4th 830 [112 Cal.Rptr.3d 354] (Hines) for publication.[10] In Hines, the court held that section 21177's exhaustion requirement applied in circumstances similar to those presented here. In that case, the appellants acknowledged the project was a single-family residence normally exempt from CEQA (Guidelines, § 15303, subd. (a)), but contended exceptions for cumulative impact and particularly sensitive environments precluded reliance on the exemption (Guidelines, § 15300.2, subds. (b) & (c)). (Hines, at pp. 851-853.) The court concluded the appellants "failed to exhaust their administrative remedies ... by failing to raise any issue regarding the purported violation of CEQA before the county at any stage, despite ample notice that county staff considered the project exempt and several opportunities ... to raise any objection or argument with respect to the categorical exemption. (§ 21177, subd. (a).)" (Hines, at pp. 852-853, fn. omitted.) The court concluded, by negative implication from section 21177, subdivision (e), that section 21177's exhaustion requirement applies when there are public hearings that include environmental review, ample notice of such hearings is given notifying the public of the agency's reliance on the exemption, and the public does not raise an objection to the exemption despite an opportunity to do so. (Hines, at pp. 852-855; see § 21177, subd. (e) ["This section does not apply to any alleged grounds for noncompliance with this division for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing prior to the approval of the project, or if the public agency failed to give the notice required by law."].) Hines cites Azusa in support of its holding, with the following parenthetical description: "exhaustion requirement applies only when CEQA provides public comment *1422 period or there is public agency hearing before notice of agency determination is filed." (Hines, at p. 854.)
The court's holding in Hines does not alter our conclusion under Azusa that section 21177's exhaustion requirement has no preclusive effect in this case. Hines does not purport to construe the language of section 21177, subdivision (a) and does not consider the Azusa analysis holding that section 21177 applies only: "where (1) CEQA provides a public comment period, or (2) there is a public hearing before a notice of determination is issued." (Azusa, supra, 52 Cal.App.4th at p. 1210, italics added.)[11] To the extent Hines is impliedly at odds with the holding in Azusa, we respectfully disagree.
(4) We recognize that following Azusa in the circumstances presented in Hines may require a court to decide factual questions reserved for agency determination, based on an evidentiary record that has not been fully developed.[12] We are persuaded, however, that theAzusa court's construction of the statutory language is correct. "`As a judicial body, ... our role [is] to interpret the laws as they are written.'" (Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 1299 [48 Cal.Rptr.3d 183, 141 P.3d 288], fn. omitted.) It is for the Legislature to weigh the relevant policy considerations in setting forth the procedure for reviewing CEQA determinations, including the necessary predicates for challenging them. (See 39 Cal.4th at p. 1299.)
*1423 Having disposed of respondents' exhaustion defense, we turn to the merits of the Tomlinsons' contentions regarding the "within city limits" requirement.

3. Substantial Evidence Does Not Support the County's Exemption Finding.

The Tomlinsons contend that substantial evidence does not show the proposed subdivision will occur "within city limits," an essential criterion of the in-fill development exemption (Guidelines, § 15332), because the site is located in unincorporated Alameda County. To satisfy this criterion, they argue, a project must occur "within the clearly demarcated (and commonly accepted) legal boundaries of a municipality." The County contends this interpretation is "inflexible" and the phrase "within city limits" must be construed in a manner that promotes in-fill development within urbanized areas. The scope of an exemption is a question of statutory interpretation that we review independently. (San Lorenzo, supra, 139 Cal.App.4th at p. 1382.) We must interpret CEQA and its Guidelines "in such a manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (Guidelines, § 15003, subd. (f); see County of Amador, supra, 76 Cal.App.4th at pp. 943-944.) Exemptions to CEQA are narrowly construed and "`[e]xemption categories are not to be expanded beyond the reasonable scope of their statutory language.'" (San Lorenzo, supra, 139 Cal.App.4th at p. 1382, quoting Mountain Lion Foundation v. Fish & Game Com. (1997) 16 Cal.4th 105, 125 [65 Cal.Rptr.2d 580, 939 P.2d 1280].)
(5) Applying these principles, we agree with the Tomlinsons' construction of section 15332, subdivision (b) of the Guidelines and conclude that the proposed subdivision will not occur "within city limits" within the meaning of this provision. The plain meaning of the phrase "within city limits," as it is used in section 15332, requires that a project occur within the boundaries of a municipality. (See People v. Dieck (2009) 46 Cal.4th 934, 940 [95 Cal.Rptr.3d 408, 209 P.3d 623] (6) [if the statutory language is clear, the statute's plain meaning generally controls].) It is undisputed that the proposed subdivision in this case does not.
(7) The County was aware throughout the administrative proceedings that the site is located in the unincorporated area of Alameda County but relied on the exemption nonetheless because the proposed subdivision would occur in an "established urban area." On appeal, the County argues against "reading the `infill' exemption too rigidly" and asserts: "Just one look at an aerial photograph of this development located a half mile from Interstate 580 unequivocally demonstrates that the project is urban infill." We disagree, concluding that the County reads the exemption too broadly. We must *1424 consider the words of the statute in the context of the statutory framework, giving "`significance ... to every word, phrase, sentence[,] and part of an act in pursuance of the legislative purpose.'" (People v. Black (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104], quoting Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Accordingly, we must give independent effect to both the requirement that the project occur "within city limits" and the final criterion in Guidelines section 15332, subdivision (b) that the project be "substantially surrounded by urban uses." The County's reading does not do so.
(8) In addition, we observe that the term "urbanized areas" is defined in the Guidelines and is used in setting out the criteria for other categorical exemptions. (See Guidelines, § 15387 ["`Urbanized area' means a central city or a group of contiguous cities with a population of 50,000 or more, together with adjacent densely populated areas having a population density of at least 1,000 persons per square mile."]; id., § 15301 [exemption for existing facilities]; id., § 15303 [exemption for new construction or conversion of small structures]; id., § 15315 [exemption for minor land divisions].) Thus, in setting out the criteria for the in-fill development exemption, the Secretary for Resources could easily have specified that a project must occur "within an urbanized area," but used the phrase "within city limits" instead. (See Guidelines, § 15332, subd. (b).) This strongly suggests that the secretary intended a different meaning for the "within city limits" criterion. (Trancas Property Owners Assn. v. City of Malibu (1998) 61 Cal.App.4th 1058, 1061 [72 Cal.Rptr.2d 131] ["the use of different words in the regulation suggests that different meanings were intended ..."]; see City of Port Hueneme v. City of Oxnard (1959) 52 Cal.2d 385, 395 [341 P.2d 318], quoting People v. Town of Corte Madera (1950) 97 Cal.App.2d 726, 729 [218 P.2d 810] ["`Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.'"].)
The County relies on CalBeach, supra, 103 Cal.App.4th 529, contending the court should refuse to apply the statutory language strictly because doing so would frustrate the goal of the exemption. CalBeach does not support the County's expansive reading of the Guideline. In that case, the Court of Appeal construed the statutory exemption for "[s]pecific actions necessary to prevent or mitigate an emergency" (emergency exemption). (§ 21080, subd. (b)(4).) CEQA defines "emergency" as "a sudden, unexpected occurrence, involving a clear and imminent danger, demanding immediate action to prevent or mitigate loss of, or damage to, life, health, property, or essential public services." (§ 21060.3; see CalBeach, at pp. 536-538.) When a public agency applied the emergency exemption in approving a special use permit for the construction of a seawall to prevent the collapse of a sandstone bluff due to erosion, a nonprofit group challenged the decision, contending the *1425 collapse of the bluff was not an "unexpected" occurrence. (CalBeach, at p. 535.) The court rejected this contention, holding that an emergency does not have to be unexpected for the emergency exemption to apply. (Id. at p. 537.) Contrary to the County's assertion, however, the court did not simply read the term "unexpected" out of the statute, as the County asks us to do here with the phrase "within city limits"; the court interpreted the provision as a whole and, applying principles of statutory construction, refused to read one portion of the statute in a way that nullified another. (Ibid.) In this case, giving effect to the phrase "within city limits" does not nullify any other part of the regulation.
(9) The County asks us to simply disregard the phrase "within city limits" because, in its judgment, this requirement "defeat[s] the exemption's goal of allowing infill in very urban settings ...." Unlike the statutory exemptions (§ 21080, subd. (b)), which reflect policy decisions of the Legislature, the categorical exemptions identified in the Guidelines represent a determination by the Secretary for Resources that particular classes of projects generally do not have a significant effect on the environment. (Guidelines, § 15300; Sunset Sky Ranch Pilots Assn. v. County of Sacramento (2009) 47 Cal.4th 902, 907 [102 Cal.Rptr.3d 894, 220 P.3d 905].) Thus, contrary to the County's assertion, a policy of encouraging urban in-fill does not overcome the requirements of CEQA and does not expand the exemption to projects that clearly lie outside the legal criteria. To the extent the County contends the statute should extend to all urban in-fill, such policy judgments are outside our purview.[13]
(10) We conclude, accordingly, that the County used the wrong legal standard in applying the exemption and that substantial evidence does not show the proposed subdivision satisfied the exemption's criteria. In short, the project was not exempt from CEQA review. It is well settled that "[a]n agency's use of an erroneous legal standard constitutes a failure to proceed in a manner required by law." (East Peninsula, supra, 210 Cal.App.3d at p. 165.) Moreover, when a failure to comply with the law subverts the purposes of CEQA by omitting information from the environmental review *1426 process, the error is prejudicial. (210 Cal.App.3d at p. 174.) As the Tomlinsons have demonstrated a prejudicial abuse of discretion, the trial court's order must be vacated.[14]

DISPOSITION
The order denying the petition is reversed, and the matter is remanded to the trial court with instructions to issue a writ of mandate directing the County to set aside its decision approving the proposed subdivision and to comply with the requirements of CEQA when reconsidering approval of the proposed subdivision. The parties shall bear their own costs.
Simons, J., and Needham, J., concurred.
NOTES
[1] All further statutory citations are to the Public Resources Code unless otherwise specified. We refer to the CEQA regulations (Cal. Code Regs., tit. 14, § 15000 et seq.), as "the Guidelines." (San Lorenzo Valley Community Advocates For Responsible Education v. San Lorenzo Valley Unified School Dist. (2006) 139 Cal.App.4th 1356, 1372 [44 Cal.Rptr.3d 128] (San Lorenzo).)
[2] An order denying a petition for a writ of mandate is appealable as a final judgment in a special proceeding. (Haight v. City of San Diego (1991) 228 Cal.App.3d 413, 416, fn. 3 [278 Cal.Rptr. 334]; Dunn v. Municipal Court (1963) 220 Cal.App.2d 858, 863, fn. 1 [34 Cal.Rptr. 251].)
[3] Both Developer and the Tomlinsons incorrectly contend that section 21168 provides the standard of review here, but that section applies in actions to set aside a public agency's decision "made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency . . . ." The County was not required to hold a hearing in connection with its exemption determination or the Tomlinsons' appeal. (See Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster (1997) 52 Cal.App.4th 1165, 1210 [61 Cal.Rptr.2d 447] (Azusa); Alameda County Gen. Ord. No. 16.08.100, subd. D [affording the Board discretion to reject an appeal of subdivision approval without a public hearing].) In any event, "[t]he distinction between [sections 21168 and 21168.5] `is rarely significant. In either case, the issue . . . is whether the agency abused its discretion.'" (County of Amador v. El Dorado County Water Agency (1999) 76 Cal.App.4th 931, 945 [91 Cal.Rptr.2d 66] (County of Amador).)
[4] If the proposed subdivision is not exempt, the agency must proceed to "[t]he second tier of the process" and conduct an initial study to determine whether there is "`substantial evidence that the project may have a significant effect on the environment.'" (San Lorenzo, supra, 139 Cal.App.4th at p. 1373; see Guidelines, §§ 15063, 15070; Davidon Homes, supra, 54 Cal.App.4th at p. 113.) If so, the agency must prepare a full environmental impact report. (San Lorenzo, at p. 1373; Davidon Homes, at p. 113.)
[5] The Tomlinsons also contend the proposed subdivision "would not entirely comply with the local zoning ordinance," and would not be served by existing utilities. (See Guidelines, § 15332, subds. (a), (e).) They have not set forth all the material evidence on these issues, pointing only to evidence that supports their position, and have waived any error in this regard. (See Foreman & Clark Corp. v. Fallon (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; Nwosu v. Uba (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].) Moreover, although they cite facts relating to utilities and zoning, they fail to provide a reasoned argument establishing this claim of error. (See Benach v. County of Los Angeles (2007) 149 Cal.App.4th 836, 852 [57 Cal.Rptr.3d 363].)
[6] The trial court agreed with respondents' contentions in this regard. We review this determination independently. (Sierra Club v. City of Orange (2008) 163 Cal.App.4th 523, 536 [78 Cal.Rptr.3d 1] (City of Orange); Citizens for Open Government v. City of Lodi (2006) 144 Cal.App.4th 865, 873 [50 Cal.Rptr.3d 636] (Lodi).)
[7] "`"[G]eneral objections to project approval,"'" "`generalized environmental comments.. .,' `relatively . . . bland and general references to environmental matters' [citation], or `isolated and unelaborated comment[s]' [citation] will not suffice." (City of Orange, supra, 163 Cal.App.4th at p. 536.) Nonetheless, "less specificity is required to preserve an issue for appeal in an administrative proceeding than in a judicial proceeding . . . because `"[in] administrative proceedings, [parties] generally are not represented by counsel. To hold such parties to knowledge of the technical rules of evidence and to the penalty of waiver for failure to make a timely and specific objection would be unfair to them." [Citation.] It is no hardship, however, to require a layman to make known what facts are contested.' [Citation.]" (Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo (1985) 172 Cal.App.3d 151, 163 [217 Cal.Rptr. 893]; see East Peninsula, supra, 210 Cal.App.3d at pp. 176-177.)
[8] The hearing in this case was not sufficient to invoke the requirements of section 21177. In Azusa, although the agency had taken comments from staff and interested members of the public at its regularly scheduled public meeting, the court rejected the appellant's contention that this qualified as a "`public hearing . . . before the issuance of the notice of determination.'" (Azusa, supra, 52 Cal.App.4th at pp. 1188, 1210; see also Concerned McCloud Citizens v. McCloud Community Services Dist. (2007) 147 Cal.App.4th 181, 189-190 [54 Cal.Rptr.3d 1] [holding that CEQA did not require a public comment period in connection with agency's determination that approval of a tentative agreement did not constitute "approval" of a proposed subdivision triggering CEQA requirements, and informational meeting did not qualify as a "public hearing . . . before the issuance of the notice of determination"].)
[9] As the parties' briefs did not address the applicability of the exhaustion requirement of section 21177 in an action challenging an agency's exemption determination, we requested supplemental briefing regarding this issue and the court's authority to decide it, in light of the Tomlinsons' concessions and failure to raise this argument. (See Gov. Code, § 68081.) In the supplemental briefing, the Tomlinsons argued that Azusa sets a "very low bar" for exhaustion of administrative remedies for exemption determinations, but maintained the position set forth in their opening and reply briefs that because they were not represented by counsel in the administrative proceedings and the County misled them regarding the exemption's criteria, their challenge to the exemption on other grounds and their general objections to the project were sufficient to exhaust their administrative remedies.
[10] We granted rehearing on our own motion to allow further consideration of Hines and asked for additional briefing from the parties regarding its impact on our decision.
[11] Section 21177, subdivision (a)'s reference to "the issuance of the notice of determination" may not be construed to encompass every agency decision. Under CEQA, the term "notice of determination" refers to a document an agency must file "[w]henever [it] approves or determines to carry out a project that is subject to this division [(CEQA)] ...." (§§ 21108, subd. (a), 21152, subd. (a).) The Guidelines set out special requirements for this document and confirm that the term "notice of determination" applies when projects are subject to CEQA. (See Guidelines, § 15094 [contemplating an environmental impact report or initial study showing no significant effect on the environment].) When an agency determines that CEQA does not apply because a project is exempt, it may file a "notice of the determination ...." (§§ 21108, subd. (b), 21152, subd. (b).) The Guidelines refer to this filing as a "notice of exemption" and treat it as a separate document with its own requirements and statute of limitations. (Guidelines, § 15062; compare § 21167, subd. (d) [a notice of exemption commences a 35-day statute of limitations] with Guidelines, § 15094, subd. (g) [a notice of determination commences a 30-day statute of limitations]; see also § 21167, subds. (b) & (c).) There is no indication the County filed a notice of exemption in this case.
[12] Like an exemption determination, CEQA does not provide for a public comment period or require a notice of determination when an agency considers whether an exception precludes reliance on the exemption. (Guidelines, § 15300.2.) Applying the Azusa analysis in Hines, therefore, would have required the court to decide significant factual issues not considered by the agency (i.e., whether the project would impact wildlife and open the door to successive projects), based on an evidentiary record that addresses these questions only incidentally, if at all. (Hines, supra, 186 Cal.App.4th at pp. 851-852; see Santa Teresa, supra, 114 Cal.App.4th at p. 707 ["extra-record evidence is inadmissible to support the writ petition"]; Western States Petroleum Assn. v. Superior Court, supra, 9 Cal.4th at pp. 572-573 [deference to agency determination under separation of powers doctrine and in light of agency expertise].)
[13] We question whether the proposed subdivision may be deemed "urban" in any case. The specific plan makes note of the "rural residential character of the area," and a County supervisor recognized an intent "to keep the community semi-rural as much as possible ...." Photographs show a number of trees with large canopies, an expanse of open field at the rear of the site, and suburban neighborhoods surrounding it. (See Friends of Mammoth v. Town of Mammoth Lakes Redevelopment Agency (2000) 82 Cal.App.4th 511, 541 [98 Cal.Rptr.2d 334] [explaining the term "urban"], superseded by statute on other grounds, as stated in Citizens for Responsible Equitable Environmental Development v. City of San Diego Redevelopment Agency (2005) 134 Cal.App.4th 598, 607 [36 Cal.Rptr.3d 249].)
[14] Having concluded the project does not satisfy the criteria for the in-fill development exemption (Guidelines, § 15332), we do not consider the Tomlinsons' remaining assertions of error.