[No. A054037. First Dist., Div. One. May 28, 1992.]

SIERRA CLUB, Plaintiffs and Respondents, v.
COUNTY OF SONOMA, Defendants and Respondents;
SYAR INDUSTRIES, INC., Real Party in Interest and Appellant.

1308

**COUNSEL**

Orrick, Herrington & Sutcliffe, Jeffrey S. White, David C. Spielberg, Timothy P. Walker and Bruce S. Klafter for Real Party in Interest and Appellant.

Susan Brandt-Hawley and Joseph C. Brecher for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

**OPINION**

**STRANKMAN, P. J.—** ▆▆▆▆ This appeal by real party in interest Syar Industries, Inc. (Syar) is from an order granting a petition for writ of mandate and directing the County of Sonoma (the County) to: (1) set aside its approval of an application by Syar to engage in terrace mining operations along the Russian River; and (2) require preparation of an environmental impact report (EIR) before any further approval of the project.[1] Respondents are the Sierra Club, a California nonprofit corporation, and the Russian River Task Force, an unincorporated association.

---

[1] No judgment has been entered, apparently because the court has not yet ruled on the scope of injunctive relief to be granted. Although the one final judgment rule ordinarily precludes piecemeal disposition of multiple appeals in a single action, a reviewing court has discretion

The outcome of this appeal hinges on the standard of review applicable to the County's actions under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[2] As we will discuss, we conclude that the proper test is whether the administrative record contains substantial evidence to support a fair argument that Syar's proposed site-specific project may cause significant adverse effects on the environment that were not examined in a prior, more general program EIR. We also conclude that the record contains such substantial evidence and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In late 1981, the County certified and adopted the Aggregate Resources Management Plan (Plan or ARM Plan), consisting of a program EIR on gravel and hardrock mining in the County and a specific management plan for regulating that mining. The Plan acknowledged and analyzed in detail several significant adverse environmental effects of all mining operations, but concluded that substantial long-term mitigation could be achieved in part through proper site reclamation.

The components of the ARM Plan included the Aggregate Mining Plan, specifying lands available for future supplies of aggregate materials, and the Managed Resources/Open Space Plan, providing in part for protection of riparian habitats, reclamation, and preservation of agricultural lands. Certain areas were designated "Managed Resource: Mineral," a category which included "[a]ll mineral resource deposits in Sonoma County necessary for a future supply of aggregate materials . . . ." Other land was designated "Managed Resource: Agriculture." This category included "[a]ll lands over-lying mineral resource deposits within the Study area which are proposed for preservation for their value as both an agricultural resource and as ground-water recharge."

Among the mining operations described in the ARM Plan was terrace mining, which is carried out on the flood plain terraces adjacent to a river

to consider an appeal from a judgment granting or denying a petition for writ of mandate even though a count seeking injunctive relief remains undecided. (See *McClure* v. *County of San Diego* (1987) 191 Cal.App.3d 807, 811 [236 Cal.Rptr. 653]; *Highland Development Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 169, 178-179 [215 Cal.Rptr. 881].) The record here does not contain a judgment granting the petition, only an order. Nevertheless, we deem that order as an appealable judgment and treat the appeal as from the judgment. (See *Basinger* v. *Rogers & Wells* (1990) 220 Cal.App.3d 16, 20-21 [269 Cal.Rptr. 332].)

[2]Unless otherwise indicated, all further statutory references are to the Public Resources Code.

channel.[3] An area of approximately 2,000 acres in the Middle Reach of the Russian River basin was designated as eligible for terrace mining use permits. Loss of prime soils from agricultural production was identified as an unavoidable impact of terrace mining, which involves removal of the alluvial sand and gravel to depths of 75 feet. Reclamation of the resulting pits to agricultural use was proclaimed "the first priority" for such operations. The Plan directed the refilling of the pits by diversion of river-borne sediments from the Russian River, subject to certain conditions. A County ordinance enacted to implement the management plan required each applicant for a terrace mining use permit to submit a reclamation plan; approval of the permit was contingent upon approval of that plan.

After the ARM Plan was approved, several use permits were issued for terrace mining along the Russian River. The Basalt Rock Company received a permit in 1985 to mine approximately 50 acres in an area known as the Grace Ranch property near Healdsburg. Syar acquired the Grace Ranch property and other Basalt assets in 1986. In late 1989, Syar applied to amend the ARM Plan by transferring the "Managed Resource: Mineral" designation from 145 acres west of the Grace Ranch to another 145-acre parcel along the river which was designated for agriculture, not mining. Syar also sought a use permit to mine 50 of those acres and another ARM Plan amendment to allow reclamation by refilling pits with processing sediments and other earth materials, rather than by the river diversion process.

The County's Board of Supervisors (the Board) held several hearings and considered both oral and written statements supporting and opposing the application. The Board concluded that except for the use of nonnative earth fill for reclamation, all of the environmental impacts which might result from the proposed changes had already been considered in the ARM Plan EIR; therefore, it adopted a negative declaration and approved the application, subject to certain limitations, including redesignation of 30 acres instead of 145. Although it rejected any use of nonnative earth fill, it otherwise approved the revised reclamation plan.

Respondents petitioned for writ of mandate alleging, inter alia, that the Board violated CEQA by certifying a negative declaration and not requiring a new EIR. The trial court granted the petition in part, on the ground that there was "substantial evidence in the record supporting a fair argument that the proposed method of reclamation may have significant environmental effects, thereby requiring the preparation of an [EIR]." The court ordered the County to set aside its approval of the Syar project and require preparation

---

[3]The ARM Plan also discussed two other mining operations: hardrock or quarry mining and alluvial operations located within the stream channel.

of an EIR before any further approval.[4] The court did not grant respondents' request for injunctive relief as to further mining by Syar under the disapproved use permit; instead, it noted that mining was not then occurring under the permit and ordered the parties to confer on that issue. This appeal by Syar followed.

## DISCUSSION

### a. *Introduction*

The Supreme Court has repeatedly observed that the Legislature intended CEQA to be interpreted to afford the fullest possible protection to the environment within the reasonable scope of the statutory language. (See, e.g., *Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 563-564 [276 Cal.Rptr. 410, 801 P.2d 1161, and cases there cited.) ▪ Central to CEQA is the EIR, which has as its purpose informing the public and government officials of the environmental consequences of decisions before they are made. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392 [253 Cal.Rptr. 426, 764 P.2d 278].)

▪▪▪ An EIR must be prepared on any "project" a local agency intends to approve or carry out which "may have a significant effect on the environment." (§§ 21100, 21151; Guidelines, § 15002, subd. (f)(1).)[5] The term "project" is broadly defined and includes any activities which have a potential for resulting in a physical change in the environment, directly or ultimately. (§ 21065; Guidelines, §§ 15002, subd. (d), 15378, subd. (a); *Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277, fn. 16 [118 Cal.Rptr. 249, 529 P.2d 1017].) ▪ The definition encompasses a wide spectrum, ranging from the adoption of a general plan, which is by its nature tentative and subject to change, to activities with a more immediate impact, such as the issuance of a conditional use permit for a site-specific development proposal. (See 13 Cal.3d at p. 278; see also 1 Manaster & Selmi, Cal. Environmental Law and Land Use Practice (Mar. 1992 cum. supp.) § 21.05 [3], pp. 21-18–21-19.)

---

[4]Respondents' petition also sought an order directing the County to postpone approval of any current or future applications for mining in the Middle Reach of the Russian River until an updated or supplemental ARM Plan was certified; the trial court denied that request, in part because the administrative record provided no factual basis for ordering a countywide moratorium.

[5]References to Guidelines are to the administrative Guidelines for Implementation of CEQA. (Cal. Code Regs., tit. 14, § 15000 et seq.) The Supreme Court has not yet decided whether the Guidelines are regulatory mandates or interpretive aids. Nevertheless, it has stated that at a minimum, courts should afford great weight to the Guidelines except when a section is clearly unauthorized or erroneous under CEQA. (*Laurel Heights Improvement Assn. v. Regents of University of California, supra,* 47 Cal.3d at p. 391, fn. 2.)

To accommodate this diversity, the Guidelines describe several types of EIR's, which may be tailored to different situations. The most common is the project EIR, which examines the environmental impacts of a specific development project. (Guidelines, § 15161.) A quite different type is the program EIR, which "may be prepared on a series of actions that can be characterized as one large project and are related either: (1) Geographically, (2) As logical parts in the chain of contemplated actions, (3) In connection with issuance of rules, regulations, plans, or other general criteria to govern the conduct of a continuing program, or (4) As individual activities carried out under the same authorizing statutory or regulatory authority and having generally similar environmental effects which can be mitigated in similar ways." (Guidelines, § 15168, subd. (a); see also *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 399, fn. 8 [suggesting program EIR and tiering for a project of considerable magnitude with future uses as yet undetermined].)

The 1981 ARM Plan EIR accurately defines itself as a program EIR. It was not focused narrowly on a specific development project, but instead addressed the environmental effects of a complex long-term management plan for obtaining future supplies of aggregate resources from existing and potential resource areas county-wide, and of the ordinances and standards necessary for implementing that plan.

b. *The Standard of Review*

■ Syar's principal contention is that the trial court erred when it concluded that the County was obligated to use the "fair argument" test in assessing whether a new EIR had to be prepared on Syar's proposed project.

■ The "fair argument" test is derived from section 21151, which requires an EIR on any project which "may have a significant effect on the environment." That section mandates preparation of an EIR in the first instance "whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact." (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66].) If there is substantial evidence of such impact, contrary evidence is not adequate to support a decision to dispense with an EIR. (*Long Beach Sav. & Loan Assn.* v. *Long Beach Redevelopment Agency* (1986) 188 Cal.App.3d 249, 264 [232 Cal.Rptr. 772]; *Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1071 [230 Cal.Rptr. 413]; Guidelines, § 15064, subds. (g), (h).) Section 21151 creates a low threshold requirement for initial preparation of an EIR and reflects a preference for resolving doubts in favor of environmental review when the question is whether any such review is

warranted. (*Oro Fino Gold Mining Corp.* v. *County of El Dorado* (1990) 225 Cal.App.3d 872, 881 [274 Cal.Rptr. 720]; *Bowman* v. *City of Petaluma, supra,* at p. 1073.) For example, if there is a disagreement among experts over the significance of an effect, the agency is to treat the effect as significant and prepare an EIR. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1000-1001 [165 Cal.Rptr. 514]; Guidelines, § 15064, subds. (g), (h).)

On the other hand, after an EIR has been prepared for a project, section 21166 prohibits agencies from requiring a subsequent or supplemental EIR unless "[s]ubstantial changes" are proposed in the project or in its circumstances which will require "major revisions" in the EIR, or unless certain new information becomes available.[6] (See also Guidelines, § 15162.) ■ "[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired [citation], and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process." (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at pp. 1072-1073, original italics; accord *Long Beach Sav. & Loan Assn.* v. *Long Beach Redevelopment Agency, supra,* 188 Cal.App.3d at p. 265.) Under section 21166, an agency's determination not to require a subsequent EIR must be based on substantial evidence in the record; if there are conflicts in the evidence, their resolution is for the agency. (See *Bowman* v. *City of Petaluma, supra,* at pp. 1078-1081; *Benton* v. *Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1483 [277 Cal.Rptr. 481].)

The difference between these two tests affects the nature of any subsequent judicial review. Judicial review under CEQA is generally limited to whether the agency has abused its discretion by not proceeding as required by law or by making a determination not supported by substantial evidence. (§§ 21168, 21168.5; *Citizens of Goleta Valley* v. *Board of Supervisors, supra,* 52 Cal.3d at p. 564; *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 392 & fn. 5.) ■ A court reviewing an agency's decision not to prepare an EIR in the first instance must set aside the decision if the administrative record contains substantial evidence that a proposed project might have a significant environmental impact; in such a case, the agency has not proceeded as required by law.

---

[6] Section 21166 provides in relevant part: "When an [EIR] has been prepared for a project . . . no subsequent or supplemental [EIR] shall be required . . . , unless one or more of the following events occurs: [¶] (a) Substantial changes are proposed in the project which will require major revisions of the [EIR]. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the [EIR]. [¶] (c) New information, which was not known and could not have been known at the time the [EIR] was certified as complete, becomes available."

(*Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at p. 1002.) Stated another way, the question is one of law, i.e., "the sufficiency of the evidence to support a fair argument." (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1073.) Under this standard, deference to the agency's determination is not appropriate and its decision not to require an EIR can be upheld only when there is no credible evidence to the contrary. (See *Citizen Action to Serve All Students* v. *Thornley* (1990) 222 Cal.App.3d 748, 754-759 [272 Cal.Rptr. 83].)

■ But when a court reviews an agency decision under section 21166 not to require a subsequent or supplemental EIR on a project, the traditional, deferential substantial evidence test applies. The court decides only whether the administrative record as a whole demonstrates substantial evidence to support the determination that the changes in the project or its circumstances were not so substantial as to require major modifications of the EIR. (*Fund for Environmental Defense* v. *County of Orange* (1988) 204 Cal.App.3d 1538, 1544-1545 [252 Cal.Rptr. 79]; *Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1075.)[7]

■ Syar contends that the governing test here is that set forth in section 21166. Syar reasons that section 21166 applies whenever the question is whether a second EIR should be prepared, even if the first EIR was a program EIR, and that Guidelines, section 15168, subdivision (c), which discusses the use of a program EIR with later activities, adopts the criteria of section 21166 and does not require application of the more stringent fair argument standard in any instance. But in focusing on section 21166, Syar has overlooked other provisions of CEQA which specify the preferred procedure when an EIR has been certified for a program or plan and a later project is proposed.

CEQA directs agencies to "tier" EIR's whenever feasible, in part to streamline regulatory procedures and eliminate repetitive discussions of the same issues in successive EIR's. (§ 21093; *Las Virgenes Homeowners Federation, Inc.* v. *County of Los Angeles* (1986) 177 Cal.App.3d 300, 307 [223 Cal.Rptr. 18].)[8] Section 21068.5 defines "tiering" as the "coverage of general matters and environmental effects in an [EIR] prepared for a policy, *plan, program* or ordinance followed by narrower or site-specific [EIR's] which incorporate by reference the discussion in any prior [EIR] and which

---

[7]This substantial evidence test also applies when a court evaluates whether an agency properly issued a second negative declaration on a project. (*Benton* v. *Board of Supervisors, supra,* 226 Cal.App.3d at pp. 1481-1483.)

[8]Section 21093, subdivision (b), provides in relevant part that EIR's "shall be tiered whenever feasible, as determined by the lead agency."

concentrate on the environmental effects which (a) are capable of being mitigated, or (b) were not analyzed as significant effects on the environment in the prior [EIR]." (See Guidelines, § 15152, italics added.)

Section 21094 states the procedure to be followed for tiered EIR's. Subdivision (a) provides in pertinent part: "Where a prior [EIR] has been prepared and certified for a program [or] plan, . . . the lead agency for a later project that meets the requirements of this section shall examine significant effects of the later project upon the environment by using a tiered [EIR], except that the report on the later project need not examine those effects which the lead agency determines were . . . examined at a sufficient level of detail in the prior [EIR] . . . ." Of particular significance to the present appeal, subdivision (c) provides: "For purposes of compliance with this section, an initial study shall be prepared to assist the lead agency in making the determinations required by this section. The initial study shall analyze whether the later project *may cause significant effects on the environment* that were not examined in the prior [EIR]." (Italics added.)

The italicized language is unlike that of the restrictive wording of section 21166, and is instead nearly identical to that of section 21151: "All local agencies shall prepare . . . an [EIR] on any project . . . which *may have a significant effect on the environment.*" (Italics added.) ▮ As we have discussed, the latter section has been construed to establish a low threshold and require an EIR whenever substantial evidence indicates that the action arguably will have an adverse environmental impact, even if there is also contrary evidence. ▮ It appears from the Legislature's use of similar language in section 21094, subdivision (c), that it intended to establish a similar low threshold for an agency's determination whether to prepare a new EIR on a later new project which follows certification of a program or plan EIR. In other words, if there is substantial evidence in the record that the later project may arguably have a significant adverse effect on the environment which was not examined in the prior program EIR, doubts must be resolved in favor of environmental review and the agency must prepare a new tiered EIR, notwithstanding the existence of contrary evidence.[9]

We have not overlooked subdivision (b) of section 21094, which provides in pertinent part, "This section applies only to a later project which the lead

---

[9]The Guidelines appear to be in accord on this point, although their wording is less precise. For instance, Guidelines section 15152 encourages agencies generally to tier EIR's; subdivision (d) explains that the initial study "shall be used to decide whether and to what extent the prior EIR is still sufficient for the present project." Guidelines section 15168 focuses specifically on program EIR's; subdivision (c)(1) states: "If a later activity would have effects that were not examined in the program EIR, a new initial study would need to be prepared leading to either an EIR or a negative declaration."

agency determines . . . is not subject to Section 21166." Thus by its own terms, section 21094 does not apply to later projects which are subject to section 21166. (See also Guidelines, § 15168, subd. (c)(2) ["If the agency finds that pursuant to [Guidelines] Section 15162, no new effects could occur . . . the agency can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document would be required."].) But section 21166 and its companion section of the Guidelines appear to control only when the question is whether more than one EIR must be prepared for what is essentially the same project. For example, in *Fund for Environmental Defense* v. *County of Orange, supra,* 204 Cal.App.3d 1538, an EIR was certified in 1981 on development of a medical research and laboratory complex, but the use permit expired before the facility was constructed. Later, the agency issued another use permit for that same complex without requiring a new EIR. Relying on section 21166, the reviewing court held that substantial evidence supported the agency's determination. (204 Cal.App.3d at pp. 1542-1545, 1552.) In *Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d 1065, an EIR was certified for a proposed subdivision; the reviewing court held that section 21166 governed an agency's later determination that a subsequent EIR was not required for a somewhat modified version of that subdivision. (185 Cal.App.3d at pp. 1070-1075; see also *Benton* v. *Board of Supervisors, supra,* 226 Cal.App.3d at pp. 1475-1482 [negative declaration, use permit, and building permits issued for winery; section 21166 applies to application to relocate winery to nearby site].)

 In supplemental briefing requested by this court on section 21094, Syar concedes that if a proposed new activity is a separate project, the "fair argument" test should apply to an agency's decision whether to require a tiered EIR for the later project. Syar argues that here, its proposed activity was not a separate project, but was instead a part of or a minor modification of the single large project already studied in the ARM Plan. We cannot agree, as Syar sought permission to engage in terrace mining on land which was specifically designated in the Plan as an agricultural resource. Syar attempts to minimize the significance of that designation by asserting that it was based on nothing more than then existing ownerships; according to Syar, those areas owned by mining companies when the Plan was prepared were designated as a mineral resource, and the remaining areas were designated for agricultural use. But that claim simply ignores the Plan itself, which states that lands in the "Managed Resource: Agriculture" category were "proposed for preservation for their value as both an agricultural resource and as groundwater recharge."[10] Under these circumstances, the evidence does not support a determination that Syar's proposed site-specific project

---

[10]Syar's assertion is based only on a 1990 comment by one County planner about what he had been told by someone else who was "involved" at the time the EIR was prepared in 1980.

was either the same as or within the scope of the project, program, or plan described in the program EIR. (See Guidelines, § 15168, subd. (c)(5).) Therefore, section 21166 was inapplicable, and the County was obligated by section 21094, subdivision (c), to consider whether Syar's site-specific new project might cause significant effects on the environment that were not examined in the prior program EIR. If there was substantial evidence in the record that the project may arguably have such effects, the County should have required preparation of a tiered EIR, notwithstanding the existence of contrary evidence, including contrary expert opinions.

*Long Beach Sav. & Loan Assn.* v. *Long Beach Redevelopment Agency, supra,* 188 Cal.App.3d 249, upon which Syar relies, is not inconsistent with our conclusion. The *Long Beach* court held that section 21166 applied to an agency's adoption of a negative declaration on an office and retail complex within a redevelopment project, for which an EIR had been certified several years earlier. (188 Cal.App.3d at pp. 264-265.) Syar argues that because the redevelopment plan was adopted pursuant to a program EIR, the section 21166 standard of review should also apply to nonredevelopment plan program EIR's such as that at issue here. However, as the *Long Beach* court expressly recognized, redevelopment plans have special status under CEQA; Guidelines section 15180 unequivocally declares that all public and private activities in furtherance of a redevelopment plan constitute a single project, which shall be deemed approved at the time of adoption of the redevelopment plan. Moreover, Guidelines section 15180 mandates not only that an EIR on a redevelopment plan is to be treated as a program EIR; it also mandates that no subsequent EIR's are required for individual components of the plan unless a subsequent EIR or supplement would be required by Guidelines sections 15162 or 15163. Given the specificity of these Guidelines and the unique nature of the project involved, the *Long Beach* case is of no assistance in resolving the question in this appeal.

c. *Application of the "Fair Argument" Test*

 Our role in applying the above described test is identical to that of the trial court; we review the administrative record to determine whether it is free from legal error. (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1076.) Although the trial court's findings are not dispositive, we agree with its conclusion.

The ARM Plan acknowledged and discussed several significant adverse environmental effects of mining operations, including the removal of prime soils from agricultural production, which inevitably results from terrace mining. Nevertheless, it also concluded that long-term mitigation for many

of these effects could be achieved through proper site reclamation. Concerning terrace mining operations, it declared reclamation to agricultural use as "the first priority" and specifically directed refilling of terrace pits by the diversion of river-borne sediments from the Russian River, subject to certain conditions, among them that over the long term, the rate of reclamation to agricultural use should equal or approach the rate of extraction.

The Plan did not authorize use of sediments or fines remaining from terrace mining processing operations for reclamation, although it did comment briefly on that method. It noted that because approximately 90 percent of the extracted materials remain in the aggregate products sold by terrace operations, the waste muds account for only about 10 percent; therefore, only 10 percent of the prime land excavated can be returned through direct operation.

Syar's 1989 application requested a change in the ARM Plan, to permit reclamation by refilling of terrace pits with processing sediments and other earth materials.[11] The evidence before the Board was in conflict on the effect of this change. Dr. Robert Curry, a University of California professor of environmental geology, with specialties in hydrology, soil science, and surface mining impact assessment, submitted a report commenting on the possible long-term groundwater impacts of the Syar proposal; he also spoke at the Board hearing. Curry considered the change particularly ill-advised because of its potential adverse effect on the recharge of the aquifer. He reasoned in part that the fine-grained processing sediments are the most undesirable in the aquifer because they serve to block recharge and seal the sides and bottoms of the pit against passage of water. Curry also questioned whether the proposed reclamation activity could lead to a timely return of the mined sites to any reasonable levels of agricultural productivity; in particular, he emphasized the shortfall predicted by the data supporting the application. His report also specified certain data that he believed essential to evaluate the probabilities of success for reclamation to agricultural use of these sites.

Although other experts disagreed with Curry, his report and statements constitute substantial evidence supporting a fair argument that Syar's proposed project may cause significant effects on the environment that were not examined in the prior ARM Plan EIR. (§ 21094, subd. (c).) Accordingly, the

---

[11]Basalt's 1985 use permit for the Grace Ranch apparently allowed reclamation by the processing sediments method, even though that practice was not allowed by the ARM Plan. Syar continued that practice, filling pits with stored topsoil and processing sediment piped in from its Healdsburg plant. When Syar applied for the use permit at issue in the present case, it also sought a finding that reclamation to agricultural uses was proceeding successfully in its existing Grace Ranch pits.

trial court correctly ordered the County to set aside its approval of the project pending preparation of an EIR.

Given our conclusion, we need not consider respondents' alternative contentions that the negative declaration improperly relied on future studies or segmented the project.

## DISPOSITION

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

A petition for a rehearing was denied June 29, 1992, and the petition of real party in interest for review by the Supreme Court was denied August 27, 1992. Panelli, J., and Arabian J., were of the opinion that the petition should be granted.