Filed 9/20/23  Bd. of Trustees of the United Food & Com. Workers etc v. City of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNITED FOOD & COMMERCIAL WORKERS LOCAL 135, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN DIEGO, <br><br> Defendant and Respondent; <br><br> SCOTTISH RITE CATHEDRAL OF SAN DIEGO et al., <br><br> Real Parties in Interest and Respondents. | D080621 <br><br><br> (Super. Ct. No. 37-2021-00027189-CU-TT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Rebecca L. Reed, and Megan E. Dawson, for Plaintiffs and Appellants.

Mara W. Elliott, City Attorney, and Tyler L. Krentz, Chief Deputy City Attorney, for Defendant and Respondent.

Buchalter, a Professional Corp. and Brian Fish, Robert M. Dato, and Chandra A. Roam, for Real Party in Interest and Respondent Home Depot U.S.A., Inc.

Lounsbery Ferguson Altona & Peak and Punam Prahalad, for Real Party in Interest and Respondent The Scottish Rite Cathedral of San Diego.

The Board of Trustees of the United Food & Commercial Workers Local 135 and United Food & Commercial Workers Union Local 135 (collectively, UFCW) appeal from a judgment denying their petition for writ of mandate challenging the City of San Diego's (City) approval of an addendum to a program environmental impact report (PEIR) for construction of a Home Depot (Project) in the Mission Valley area.

UFCW's narrow contention on appeal is that the addendum's approval violated the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.)[1] because the City failed to follow proper procedures. Specifically, UFCW contends that the City's use of section 21166 and corresponding CEQA Guidelines sections 15162 and 15164,[2] which govern the use of subsequent EIRs and addendums, was inappropriate. According to UFCW, the City was instead obligated to apply section 21094 and Guidelines sections 15152 and 15168, which address tiered EIRs and program EIRs. Under those procedures, UFCW contends, the City should have prepared an

---

[1]    Further statutory references are to the Public Resources Code unless otherwise stated.

[2]    The CEQA Guidelines (Guidelines; Cal. Code Regs., tit. 14, § 15000 et seq.) are promulgated by the state's Natural Resources Agency (Resources Agency) for the implementation of CEQA by public agencies. (§ 21083; *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 217, fn. 4 (*Center*).) Further Guideline references are to the CEQA Guidelines.

initial study, another EIR, or some other environmental document for the Project.

We conclude that the City did not violate CEQA in approving the addendum. The City made determinations—the substance of which UFCW does not challenge—under Guidelines sections 15162 (subsequent EIRs and negative declarations) and 15164 (addendums or negative declarations), and it prepared an addendum to comply with those Guidelines and with Guidelines section 15168 (program EIRs). The mere fact that the City did not explicitly cite to Guidelines section 15168 in the addendum does not mean it failed to comply with it. Furthermore, we conclude that the City did not abuse its discretion by applying section 21166 (governing subsequent EIRs), so we reject UFCW's argument that the City should have proceeded under section 21094 (governing tiered EIRs) instead. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *The PEIR*

In September 2019, the City approved a comprehensive update to the existing community plan (CPU) in Mission Valley. In relevant part, the CPU specified that areas in the community south of Interstate 8 would "be enhanced through . . . new opportunities for regional retail development[.]" The City prepared a PEIR for the CPU, which stated under the heading "Intended Uses of the EIR":

> "In accordance with CEQA Guidelines Section 15168, a PEIR may serve as the environmental document for subsequent activities or implementing actions, including future development of public and private projects, to the

_____

[3]    Because UFCW does not assert that the City's factual determinations are unsupported by substantial evidence, we provide an abbreviated summary of the relevant facts.

extent that it contemplates and adequately analyzes the potential environmental impacts of those subsequent projects. If, in examining future actions for development within the CPU area, the City finds that no new effects could occur, or no new mitigation measures would be required other than those analyzed and/or required in this PEIR, the City may approve the activity as being within the scope covered by this PEIR, and no new environmental documentation would be required. If additional analysis is required, it can be streamlined by tiering from this PEIR pursuant to CEQA Guidelines Sections 15152, 15153, and 15168 (e.g., through preparation of a Mitigated Negative Declaration, Addendum, or EIR)."

Under the headings of "Type of EIR" and "PEIR Scope and Content," the PEIR stated that "[t]his PEIR is a Program EIR as defined in Section 15168 of the CEQA Guidelines" and that "all phases, or in the case of this proposed CPU, all discretionary actions associated with the proposed CPU, are considered at the program level in this PEIR when evaluating potential impacts on the environment, including the construction of future development and supporting facilities and infrastructure." The PEIR's "Environmental Analysis" section provided that "[i]ndividual projects implemented under the proposed CPU would be assessed at the time they are proposed to determine whether additional environmental review is warranted in accordance with CEQA."

The PEIR contained several hundred pages of discussion and several thousand pages of supporting technical appendices. The City certified the PEIR in September 2019, and the record contains no indication that anyone from UFCW submitted comments or challenged the adequacy of the PEIR before CEQA's statute of limitations expired. (See § 21167, subd. (c) [challenge to EIR "shall be commenced within 30 days from the date of the filing of the [required] notice" by lead agency].)

4

*B. The Home Depot Project*

The proposed Project site is owned by the Scottish Rite Cathedral of San Diego (Scottish Rite) and is located within the area covered by the Mission Valley CPU south of Interstate 8. In 2021, the site consisted of a building where Scottish Rite operated and where trade shows were sometimes held, a used car dealership, and a parking lot. The CPU designated the site location for "Regional Office and Visitor Commercial" use, including "Big Box Stores."

The Project contemplates replacing the existing buildings at the site with a new, smaller headquarters for Scottish Rite's use alone, and not for outside events like trade shows. The site would also include a new Home Depot store with approximately 106,000 square feet of building space, a garden center, and a parking structure.

The City prepared an addendum to the PEIR in February 2021 to evaluate whether the Project would have environmental impacts "consistent with the previously certified PEIR." Specifically, the addendum sought to analyze "the adequacy of the PEIR relative to the project[]" and document "that the proposed project-related modifications and/or refinements would not cause new or more severe significant impacts than those identified in the 2019 Mission Valley CPU PEIR nor otherwise trigger the need for a subsequent or supplemental EIR." The City determined in the addendum that none of the conditions requiring a subsequent EIR described in Guidelines section 15162, subdivision (a), applied to the Project, and that pursuant to Guidelines section 15164, use of the addendum was proper. In other words, the City determined that there would be "no substantial changes proposed[,]" that no substantial changes in circumstances had occurred, and that "no new information of substantial importance" had manifested, which

5

would require "major revisions" to the PEIR. (See Guidelines, § 15162, subd. (a).) The City further stated in the addendum that there was no new information that "would result in new significant or substantially increased adverse impacts as a result of the project" than were previously addressed in the PEIR. (*Ibid*.) The addendum incorporated approximately 1,800 pages of project-specific technical studies to support its conclusions.

The City Council voted to approve the Project in May 2021, and in its resolution authorizing the Project, the City Council included in its findings that the addendum "identified that the project impacts have already been analyzed in the PEIR[,]" that the analysis included all impact areas required under CEQA, and that the addendum reinstated the impacts and mitigation measures previously identified in the PEIR.

UFCW filed a petition for writ of mandate challenging the approval, and the trial court denied the petition. UFCW timely appealed.

DISCUSSION

*A. Governing Law*

An EIR's purpose under CEQA "is 'to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.' [Citation.] The EIR thus works to 'inform the public and its responsible officials of the environmental consequences of their decisions before they are made,' thereby protecting ' "not only the environment but also informed self-government." ' " (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 944 (*San Mateo Gardens*); see *IBC Business Owners for Sensible Development v. City of Irvine* (2023) 88 Cal.App.5th 100, 118 (*IBC*.)

6

This case involves a program EIR, which " 'may be prepared on a series of actions that can be characterized as one large project' and are related in specified ways. [Citation.] An advantage of using a program EIR is that it can '[a]llow the lead agency to consider broad policy alternatives and program wide mitigation measures at an early time when the agency has greater flexibility to deal with basic problems or cumulative impacts.' [Citation.]" (*In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1169.)

Program EIRs are used "to avoid preparing multiple EIRs for a series of actions." (*Save Berkeley's Neighborhoods v. Regents of University of California* (2020) 51 Cal.App.5th 226, 242.) When used for this purpose, "the public agency must examine [subsequent] site-specific program activities 'in the light of the program EIR to determine whether an additional environmental document must be prepared.' [Citation.] If the site-specific activity will not create effects or require mitigation measures that were not discussed in the program EIR, the public agency is not required to prepare any other site-specific environmental document." (*Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 234 Cal.App.4th 214, 238.) "Put differently, preparation of a site-specific environmental document through a public process is only required if the agency discovers new impacts that were unaddressed in the program EIR. [Citation.]" (*IBC, supra*, 88 Cal.App.5th at p. 119.)

Several sections in the Public Resources Code and CEQA Guidelines address the determination of whether later activities are within the scope of a program EIR. (*IBC, supra*, 88 Cal.App.5th at p. 119.) Section 21166 prohibits agencies from requiring a subsequent or supplemental EIR unless: (1) "[s]ubstantial changes are proposed in the project which will require major revisions of the environmental impact report," (2) there are

7

"[s]ubstantial changes" to the project's circumstances that will require major revisions to the EIR, or (3) new information becomes available. (§ 21166; accord *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1317 (*Sierra Club*).)

"Section 21166 effectively creates a presumption against further environmental review after a project has been previously subjected to environmental review. [Citations.]" (*Save Our Heritage Organisation v. City of San Diego* (2018) 28 Cal.App.5th 656, 666 (*Heritage*).) "[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired [citation], and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process. [Citation.]" (*Id.* at pp. 666–667; see also *Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1074 [section 21166 is "intended to provide a balance against the burdens created by the environmental review process and to accord a reasonable measure of finality and certainty to the results achieved."].)

The Resources Agency promulgated Guidelines sections 15162 and 15164, among others, to implement section 21166. (See *Heritage*, *supra*, 28 Cal.App.5th at p. 666.) Guidelines section 15162, subdivision (a), mirrors section 21166 and provides that once an EIR has been certified for a project, no subsequent EIR should be prepared for that project unless the lead agency determines there are substantial changes to the project, substantial changes to the circumstances surrounding the project, or new material information becomes available.

Guidelines section 15164, which governs addendums to an EIR, provides: "(a) The lead agency or a responsible agency shall prepare an addendum to a previously certified EIR if some changes or additions are

8

necessary but none of the conditions described in [Guidelines section] 15162 calling for preparation of a subsequent EIR have occurred.  [¶] . . . [¶]  (c) An addendum need not be circulated for public review but can be included in or attached to the final EIR . . . .  [¶]  (d) The decision-making body shall consider the addendum with the final EIR . . . prior to making a decision on the project.  [¶]  (e) A brief explanation of the decision not to prepare a subsequent EIR pursuant to [Guidelines section] 15162 should be included in an addendum to an EIR, the lead agency's required findings on the project, or elsewhere in the record.  The explanation must be supported by substantial evidence."

When it comes to subsequent environmental review involving program EIRs, Guidelines section 15168 instructs agencies to follow the criteria in Guidelines section 15162 to determine whether a later activity in the program is within the scope of a program EIR, or whether an additional environmental document must be prepared.  Subdivision (c)(2) of Guidelines section 15168 provides that if an agency "finds that pursuant to [Guidelines section] 15162, no subsequent EIR would be required, [it] can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document [is] required."  Subdivision (c)(4) of Guidelines section 15168 states that the agency "should use a written checklist or similar device to document the evaluation of the site and the activity to determine whether the environmental effects of [site-specific activities are] within the scope of the program EIR."

In contrast to section 21166, section 21094 addresses circumstances in which at least one of the conditions listed in section 21166 is present for a proposed project such that a subsequent or supplemental EIR is required.  In those cases, section 21094, subdivision (c), provides that an agency must

9

prepare an initial study to "analyze whether the later project may cause significant effects on the environment that were not examined in the prior environmental impact report."  Section 21094, subdivision (a), instructs agencies to use a "tiered" EIR, which "refers to using the analysis of general matters contained in a broader EIR" with later EIRs on narrower projects, "incorporating by reference the general discussions from the broader EIR[,]" and concentrating the later EIR "solely on the issues specific to the later project."  (Pub. Resources Code, § 21094, subd. (a) & Guidelines, § 15152, subd. (a).)  Section 21094 only applies if a project is *not* subject to section 21166's presumption against further environmental review.  (§ 21094, subd. (b)(3); see *Sierra Club*, *supra*, 6 Cal.App.4th at p. 1320.)

## B. Standard of Review

"Judicial review under CEQA is generally limited to whether the agency has abused its discretion by not proceeding as required by law or by making a determination not supported by substantial evidence."  (*Sierra Club*, *supra*, 6 Cal.App.4th at p. 1317.)  In CEQA suits, an appellate court reviews the agency's action, not the trial court's decision (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 427 (*Vineyard*), and "[t]he burden is on petitioner to show the City erred.  [Citations.]"  (*IBC*, *supra*, 88 Cal.App.5th at p. 117).  While we determine de novo whether the agency has employed the correct procedures, we accord greater deference to the agency's substantive factual conclusions. (*California Coastkeeper Alliance v. State Lands Commission* (2021) 64 Cal.App.5th 36, 55 (*Coastkeeper*).)

*C. Analysis*

UFCW's contention on appeal is narrow and procedural.[4] UFCW admits it is not challenging any of the City's factual determinations for lack of substantial evidence; rather, it claims that the City failed to use the correct review procedures because it followed section 21166 and corresponding Guidelines sections 15162 and 15164, which govern the use of subsequent EIRs and addendums. According to UFCW, the City was obligated to prepare an initial study, another EIR, or some other environmental document for the Project in order to comply with section 21094 and Guidelines sections 15152 and 15168, which address tiered and program EIRs.

We disagree. We begin by noting that although UFCW disclaims any challenge to the City's factual determinations, the City's decision to use the procedures outlined in section 21166 and corresponding Guidelines was premised on those determinations. Whether, how, and to what extent the proposed Project falls within the scope of the PEIR—like the question of whether an initial environmental document requires major revisions due to changed plans or circumstances—is a predominantly factual inquiry. (See *San Mateo Gardens*, *supra*, 1 Cal.5th at pp. 952–953.) It is a question for the agency to answer in the first instance, drawing on its particular expertise.

---

4      In its opening brief, UFCW appeared to challenge the City's determination under Guidelines section 15162, subdivision (a), that the Project proposed no substantial changes that would require major revisions of the PEIR. In its reply brief, however, UFCW expressly disclaims any challenge to the City's determinations, so we do not consider here whether substantial evidence supports them. (See *Overstock.com, Inc. v. Goldman Sachs & Co.* (2014) 231 Cal.App.4th 513, 530, fn. 11 [argument in opening brief, which was later conceded in reply brief, considered abandoned]; *Schwartz v. Fay* (1941) 48 Cal.App.2d 446, 448 ["point raised in defendant's opening brief was abandoned in his reply brief and in his argument, and need not be considered[]"].)

(*Center*, *supra*, 62 Cal.4th at p. 215.) Thus, contrary to what UFCW asserts, the City's choice to use an addendum generally "does not present a question as to whether [it] failed to proceed in the manner CEQA provides." (See *Coastkeeper*, *supra*, 64 Cal.App.5th at p. 61; see *Sierra Club*, *supra*, 6 Cal.App.4th at p. 1318 [when reviewing agency decision not to require a subsequent or supplemental EIR on a project, "the traditional, deferential substantial evidence test applies[]"].) Rather, deciding whether the City acted reasonably in concluding that the Project falls within the scope of the PEIR "is a fact-based inquiry into whether its determination was supported by substantial evidence"—an inquiry UFCW says it does not seek. (See *Coastkeeper*, at p. 61 [regarding agency's decision to proceed by supplemental EIR].) Given UFCW's own framing of its contentions on appeal, we review de novo whether the City employed the correct procedures, and assume for our purposes that substantial evidence supports the City's unchallenged factual determinations.

With that in mind, we address UFCW's arguments in turn. UFCW first argues that the City failed to employ the correct CEQA procedures because the Project and the CPU have to be "the same project" in order for the subsequent review provisions in section 21166 and Guidelines sections 15162 and 15164 to apply. But Guidelines section 15164 does not dictate that addendums can only be used when the initial and subsequent projects are "the same." Rather, Guidelines section 15164, subdivision (a), states that an agency "shall prepare an addendum to a previously certified EIR *if some changes or additions are necessary* but *none of the conditions described* in Section 15162 calling for preparation of a subsequent EIR have occurred." (Italics added.) Guidelines section 15168, subdivision (c)(2), also provides that an agency can rely on a prior program EIR when the subsequent action,

12

in light of Guidelines section 15162, is found to be "*within the scope of* the project covered by the program EIR[.]" (Italics added.) The projects do not have to be "the same" for one to fall within the scope of another.

UFCW cites *San Mateo Gardens* to support its assertion that the projects need to be the same for subsequent review to apply, but its reliance is misplaced. In that case, our Supreme Court actually criticized the plaintiff's argument that subsequent review provisions should only apply when a previously approved project "remains the same project as before, rather than an entirely new project[.]" (*San Mateo Gardens*, *supra*, 1 Cal.5th at p. 950.) While acknowledging that the provisions should only apply when a project has been subject to initial review, the Court found that the plaintiff's approach would "inevitably invite arbitrary results." (*Id*. at p. 951.) Instead of asking whether a proposed agency action constitutes a "new" or different project "in an abstract sense," the Court reasoned that a decision to proceed under subsequent review provisions should "necessarily rest on a determination—whether implicit or explicit—that the original environmental document retains some informational value." (*Ibid*.; see also *id*. at p. 944 [when agency proposes changes to a previously approved project, agency's environmental review obligations "depend on the effect of the proposed changes" rather than "on any abstract characterization of the project as 'new' or 'old[]' "].) We therefore reject UFCW's contention that the City was precluded from using subsequent review procedures merely because the CPU and the Project are not "the same."

UFCW goes on to argue that because the PEIR is a type of tiered EIR, the City was required to prepare an initial study pursuant to section 21094, which applies to certain tiered EIRs. By its own terms, however, section 21094 only applies if a project is *not* subject to section 21166's presumption

13

against further environmental review. (§ 21094, subd. (b)(3).) Contrary to what UFCW contends, program EIRs are not categorically excluded from section 21166 and its implementing Guidelines, nor are all program EIRs subject to section 21094. (See, e.g., *IBC*, *supra*, 88 Cal.App.5th at p. 121 ["[W]hile a program EIR may use tiering for later site-specific review, it is not required to do so. Tiering is only required if the subsequent project 'would have effects that were not examined in the program EIR.' [Citation.]"]; *Latinos Unidos de Napa v. City of Napa* (2013) 221 Cal.App.4th 192, 202 [applying section 21166 to program EIR and subsequent project]; *American Canyon Community United for Responsible Growth v. City of American Canyon* (2006) 145 Cal.App.4th 1062, 1073 [section 21094 applies to program EIRs "*unless* the agency determines the project is subject to section 21166"]; see *Sierra Club*, *supra*, 6 Cal.App.4th at p. 1321 [section 21166 governs if a subsequent project is "either the same as *or within the scope* of the project . . . described in the program EIR[]" (italics added.)].) Indeed, Guidelines section 15168, which addresses program EIRs, expressly refers to Guidelines section 15162 in providing that if an agency "finds that pursuant to [Guidelines section] 15162, no subsequent EIR would be required, [it] can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document [is] required." (Guidelines, § 15168, subd. (c)(2).)

Additionally, unlike in other instances where tiered EIRs were found to be subject to section 21094's requirements, the PEIR here did not purport to "defer analysis of certain details of later phases of long-term linked or complex projects until those phases are up for approval." (See *Vineyard*, *supra*, 40 Cal.4th at p. 431; see, e.g., *San Mateo Gardens*, *supra*, 1 Cal.5th at p. 960 [declining to treat previous environmental analysis as a tiered EIR

14

subject to section 21094 because the documents expressly concluded that "all potential impacts" of the entire project had been considered and mitigated"]; cf. Guidelines, § 15152, subd. (c) [where agency decides to use a tiered program EIR, agency may defer detailed, site-specific information].) Rather, the PEIR expressly stated that "all phases, or in the case of this proposed CPU, all discretionary actions associated with the proposed CPU, are considered at the program level in *this PEIR* when evaluating potential impacts on the environment, including the construction of future development and supporting facilities and infrastructure." (Italics added.) Accordingly, we disagree with UFCW's contention that section 21166 and its implementing Guidelines have no application to the PEIR and Project in this case.

UFCW next contends that the City did not actually follow Guidelines section 15168 (governing program EIRs) because the addendum and City Council resolution do not explicitly cite to that Guideline, because those documents do not use the exact phrase "within the scope," and because the City "affirmatively denied" having to analyze the Project under Guidelines section 15168 during a City Council hearing. In its reply brief, however, UFCW itself highlights the City's following findings which effectively conclude that the Project was "within the scope" of the PEIR by way of the relevant criteria in Guidelines section 15162: (1) "[t]here are no substantial changes proposed in the project which will require major revisions of the [PEIR] . . ."; (2) "[s]ubstantial changes have not occurred with respect to the circumstances under which the project is undertaken which will require major revisions of the [PEIR] . . ."; (3) "[b]ased upon a review of the project, none of the situations described in [Guidelines section] 15162 . . . apply[]"; and (4) "[r]elative to the [PEIR], the analysis . . . demonstrates that there

15

would be no new significant impacts that would result from the project and there is no information in the record or otherwise available that indicates that there are substantial changes in circumstances that would require major changes to the PEIR or otherwise trigger the need for a subsequent or supplemental EIR."

UFCW does not dispute that the PEIR is a program EIR prepared in accordance with Guidelines section 15168—as the PEIR itself explicitly states. Nor can UFCW dispute that the addendum incorporates the PEIR by reference, or that the Project is located within the area analyzed by the PEIR. The crux of UFCW's argument that the City did not use Guidelines section 15168 appears to turn on the technicality of whether the exact phrase "within the scope" or "15168" appears in the City's findings, and the fact that a City staff member said at a hearing that the City did not "have to go to [Guideline section 15168]" because it analyzed the Project pursuant to Guidelines section 15162. As noted, however, Guidelines section 15162 is referenced within Guidelines section 15168, and the City staff member reiterated at the hearing that the City's analysis found "no new significant impacts" in connection with the Project "that were not already identified in the PEIR." Moreover, the addendum functioned as the kind of "checklist or similar device" contemplated in Guidelines section 15168, subdivision (c)(4), to document the City's evaluation of whether the Project's environmental effects were within the scope of the PEIR.

Accordingly, from our review of the record, we conclude that the City functionally relied on and applied Guidelines section 15168, and we decline to adopt an approach that would unnecessarily elevate form over function. (See *San Mateo Gardens*, *supra*, 1 Cal.5th at p. 961 [treating mitigated negative declaration as a tiered EIR "would disregard the substance of the [agency's]

16

conclusions"]; *Citizens for a Sustainable Treasure Island v. City and County of San Francisco* (2014) 227 Cal.App.4th 1036, 1047–1048 [contention that EIR was improperly prepared as a "project EIR" instead of a "program EIR" improperly focused on EIR's title rather than its substance]; *Friends of Mammoth v. Town of Mammoth Lakes Redevelopment Agency* (2000) 82 Cal.App.4th 511, 533–534 ["level of specificity of an EIR is determined by the nature of the project and the 'rule of reason' [citation], rather than any semantic label accorded to the EIR."]; *Dusek v. Redevelopment Agency* (1985) 173 Cal.App.3d 1029, 1038 [rejecting plaintiffs' "demand for strict compliance" as "relat[ing] more to labeling and form than it does to the underlying objectives of CEQA."].)

UFCW argues for the first time in its reply brief that because master EIRs require initial studies for subsequent projects, by analogy, program EIRs should as well. "We do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them before." (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 822.) But even if UFCW properly presented the argument, it lacks merit because master EIRs are a different type of EIR than program EIRs, and are governed by different code sections and Guidelines. (See §§ 21157, et seq.; Guidelines, § 15175, et seq.) UFCW provides no persuasive reason why we should adopt the requirements for *master* EIRs here, when doing so would disregard the plain language in Guidelines sections 15168 and 15162 providing that "no subsequent EIR" and "no new environmental document" is required when a later activity is within the scope of a *program* EIR. (See Guidelines, §§ 15168, subd. (c)(2) & 15162, subd. (a).)

Lastly, we note that, other than a passing reference to traffic volume not developed into any appellate argument, UFCW does not identify any

17

environmental effects or mitigation measures for the Project that it contends were not adequately analyzed in the PEIR and its thousands of pages of appendices.  As we have explained, the basic purpose of an EIR is to inform the public and responsible officials of the environmental consequences of their decisions before they are made.  (*San Mateo Gardens*, *supra*, 1 Cal.5th at p. 944.)  UFCW does not demonstrate that the public or the City was inadequately informed regarding any environmental consequence of the Project, or that the City proceeded in a manner that would somehow defeat the fundamental purpose of CEQA.  Accordingly, we find that the City did not abuse its discretion by approving the addendum.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.


18